IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MOIRA GOLETZ, | : C.A. NO. 04-351 SLR |
| | : |
|     Plaintiff, | : |
| v. | : |
| | : |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | : |
| | : |
|     Defendant. | : |

### DEFENDANT THE PRUDENTIAL INSURANCE COMPANY OF AMERICA'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

BIFFERATO, GENTILOTTI & BIDEN

BY: _/s/ George T. Lees_

George T. Lees, Esquire
Delaware Identification No. 3647
1308 Delaware Avenue
The Buckner Building
P.O. Box 2165
Wilmington, DE  19899-2165
(302) 429-1900
Attorneys for Defendant
The Prudential Insurance Company of America

OF COUNSEL:
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Jonathan Dryer, Esquire
The Curtis Center, Suite 1130 East
Independence Square West
Philadelphia, PA 19106
(215) 627-6900

**TABLE OF CONTENTS**

|  | PAGE |
|---|---|
| TABLE OF AUTHORITIES | ii |
| NATURE AND STAGE OF THE PROCEEDINGS | 1 |
| SUMMARY OF ARGUMENT | 2 |
| STATEMENT OF FACTS | 3 |
| ARGUMENT | 8 |
|     I.    STANDARD OF REVIEW | |
|     II.    PRUDENTIAL'S DETERMINATION WAS NEITHER ARBITRARY NOR CAPRICIOUS | |
| CONCLUSION | 16 |

# TABLE OF AUTHORITIES

**CASES**                                                                                                          **PAGE**

Aetna Health Inc. v. Davila, 124 S.Ct. 2488; 159 L.Ed. 2d 312 (June 21, 2004) .............. 9

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 103 L.Ed. 2d 80, 109 S.Ct. 948 (1989) ............................................................................................... 8, 9

Hallowell v. State Farm Mut. Auto Ins. Co., 443 A.2d 925, 926 (Del. 1982). .............. 8

Kosiba v. Merck & Co., 384 F.3d 58 (3rd. Cir. 2004) ........................ 14, 15

Mitchell v. Prudential Health Care Plan, 2002 U.S. Dist. LEXIS 10567, 2002 WL 1284947. at *10, n.6 (D.Del. 2002). ........................................................... 12, 13

New Castle County v. Hartford Accident & Indem. Co., 970 F.2d 1267, 1270 (3rd Cir. Del. 1992) ................................................................................................................ 8

Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagon of Am., Inc., 222 F.3d 123, 129 (3rd Cir. 2000). ........................................................................ 10

Pinto v. Reliance Standard Life Ins., 214 F.3d 377, 390 (3rd Cir. 2000). .............. 9, 10, 11

Sanderson v. The Continental Casualty Corp., 279 F.Supp.2d 466 (D.Del. 2003) ........ 12, 13

Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc., 298 F.3d 191, 199 (3rd Cir. 2002). ........ 10

Stratton v. E.I. DuPont de Nemours & Co., 363 F.3d 250, 256, 2004 U.S. App. LEXIS 6500 (3rd Cir. 2004) ........................................................................................ 10

**OTHER AUTHORITIES**

ERISA §1132(a)(1)(B) ........................................................................... 9

## NATURE AND STAGE OF THE PROCEEDING

Counsel would respectfully refer the Court to the Opening Brief in Support of Defendant's Motion for Summary Judgment filed on or about June 9, 2005 for a full recitation of the facts surrounding this case. This is an Answering Brief in opposition to Plaintiff's Motion for Summary Judgment. Defendant, Prudential Insurance Company of America ("Prudential"), incorporates its motion for summary judgment filed on June 10, 2005, as though same was set forth at length herein. As appears below, plaintiff has failed to show that she is entitled to judgment in her favor as a matter of law. As a result, not only must her motion be denied, her claim must be dismissed.

## **SUMMARY OF ARGUMENT**

I.  STANDARD OF REVIEW

II. PRUDENTIAL'S DETERMINATION WAS NEITHER ARBITRARY NOR CAPRICIOUS

## STATEMENT OF FACTS

Plaintiff is a 43 year-old female who is claiming complete and total disability since May 1, 2000, after experiencing cervical and left arm pain and numbness following gardening activities. Plaintiff filed suit as a result of Prudential's termination of long-term disability (hereinafter "LTD") benefits. Plaintiff was afforded LTD benefits through Group Policy No. G-56249 (hereinafter the "Policy"), issued by Prudential to Banc One Corporation, her employer. The policy is an employee-sponsored benefit program, and as such is subject to the terms of the Employee Retirement Income Security Act (hereinafter "ERISA"). The policy is attached hereto by reference as Plaintiff's Appendix "1".[1]

Plaintiff claims that she has been unable to resume working since May 1, 2000. She submitted a claim for LTD benefits due to post bilateral carpel tunnel surgery and cervical sprain/strain that occurred while she was employed as a Card Member Advocate Specialist. After the six month (182 day) elimination period, plaintiff received LTD benefits for the twenty-four (24) month period from October 20, 2000 through October 29, 2002 as a result of Prudential's determination that she remained unable to perform the "material and substantial duties" of her regular occupation as set forth in the policy. Please see Plaintiff's Appendix "1". However, after the expiration of the initial twenty-four (24) month disability period (which ended October 29, 2002), her eligibility for further benefits was contingent upon her physical inability to perform the duties of "any gainful occupation" for which she is reasonably fit by education, training or experience. Id. Plaintiff's LTD benefits were terminated effective October 29, 2002 because

---

[1] Prudential's entire claims file is referenced in Plaintiff's Appendix and is incorporated herein at length by reference. Defendant is not annexing a second copy of the voluminous claims file as to avoid burdening the Court. However, defendant will immediately provide a complete copy upon request.

3

Prudential determined that the documentation supplied to them did not support an impairment that would prevent her from performing sedentary work. A complete explanation of Prudential's decision can be found in Prudential's correspondence dated June 24, 2002, which is incorporated herein by reference and attached hereto as Plaintiff's Appendix "5".

Plaintiff appealed Prudential's initial decision on August 1, 2002. In her appeal, plaintiff indicated that she was not able to perform the duties of <u>any</u> gainful occupation due to painful arthritis, hand swelling, and neck pain. The new documentation that was considered in connection with this appeal included further medical records from Dr. Swartz and Dr. Tamias, as well as the results of an Independent Medical Examination (IME) performed by Dr. Bandera. Dr. Bandera performed the IME on October 30, 2002, and opined that plaintiff had the ability to perform at least a light duty job. Please <u>see</u> Plaintiff's Appendix "30". The physical exam revealed traces of swelling in the hand bilaterally, but no tenderness, warmth, crepitus or swelling relative to the shoulders, elbow or right wrist. <u>Id</u>. The IME further revealed that plaintiff did not have reproducible tenderness of the hands in the joints, except for the left exterior wrist. <u>Id</u>. Dr. Bandera found plaintiff's range of motion of her shoulder, elbows, wrists, hands, and fingers were all within normal limits, and she had normal range of motion. <u>Id</u>. Dr. Bandera found that plaintiff's motor and sensory examination, as well as her deep tendon reflexes, were normal. <u>Id</u>. This IME revealed that plaintiff's range of motion of cervical, thoracic, and lumbosacral spine were normal without tenderness, warmth, crepitus, or swelling. <u>Id</u>.

Dr. Bandera reported that plaintiff showed good strength on push/pull activities bilaterally, and that she was able to transfer from sit to stand in a normal manner and handled her documents without problem. <u>Id</u>. Dr. Bandera concluded that plaintiff had multiple complaints

4

which did not correlate objectively. Id. Dr. Bandera indicated that there was no need for restrictions on sitting, standing, and walking activities, but that she may be restricted to lifting and carrying five to ten pounds frequently and should defer high impact activities. Id. Restrictions and limitations provided by Dr. Bandera, as well as medical evidence from plaintiff's treating physicians, supported plaintiff's ability to perform another occupation. Id.

After thoroughly reviewing this new documentation, Prudential determined that the documents did not reveal an impairment that would prevent plaintiff from performing the duties of a sedentary occupation. Therefore, Prudential reasonably denied her appeal and upheld its decision to terminate her claim for LTD benefits effective October 30, 2002. This decision was communicated to plaintiff via correspondence dated November 27, 2002. Please see Plaintiff's Appendix "12". Prudential also conducted a Transferable Skills Analysis to determine plaintiff's employability within the restrictions and limitations outlined by Dr. Bandera, and, on November 27, 2002, provided plaintiff with a list of several occupations identified by this analysis. Id.

Plaintiff submitted a second appeal that was received by Prudential on February 28, 2003. In this second appeal, plaintiff claimed that she remained unable to work due to elbow, wrist, and knee pain. Included with plaintiff's second appeal was new documentation from: Dr. Tamesis, rheumatologist; Dr. Rowe, orthopedist; and an appointment slip for surgery to have a ganglion cyst removed from her wrist with Dr. Ger., orthopedist. In order to evaluate plaintiff's second appeal, Prudential forwarded a copy of Dr. Bandera's IME report to Dr. Ger, Dr. Rowe, and Dr. Tamesis, offering plaintiff's own physicians an opportunity to comment on the information contained in the IME report. However, these physicians either declined to respond or submitted narratives that did not address the comments related to the IME that was performed. Based upon

Prudential's review of the newly submitted medical documentation, in conjunction with Dr. Bandera's IME report, it was determined that plaintiff was capable of performing the duties of another gainful employment. Therefore, Prudential reasonably denied plaintiff's second appeal and upheld its decision to terminate her claim for LTD benefits effective October 30, 2002. This decision was communicated to plaintiff via correspondence dated May 12, 2003. Please see Plaintiff's Appendix "16".

Plaintiff's third appeal was received by Prudential on December 4, 2003 and was reviewed by Prudential's Appeals Committee. Included with plaintiff's third appeal were further medical records dating from May 1995 through August 2003. In order to further evaluate plaintiff's third appeal, Prudential arranged an external review of the medical documentation contained in plaintiff's claim file with Patrick Foye, MD, who specializes in physical medicine and rehabilitation. Please see Patrick Foye, MD's reports regarding his December 30, 2003 and February 10, 2004 file reviews, attached hereto as Plaintiff's Appendix "31" and "32".

Dr. Foye noted that, based on his review of the medical records, plaintiff appeared to have some inflammatory poly arthritis, but that rheumatoid testing was negative. Id. Dr. Foye commented that plaintiff's recurrent inflammation/synovitis would be expected to create difficulty for her if she was required to perform repetitive hand activities on a frequent or continuous basis. Id. However, Dr. Foye explained that she would most likely be capable of performing an occupation with only occasional repetitive hand activities. Id. Dr. Foye also noted that plaintiff may have difficulty with repetitive overhead activities due to chronic neck and shoulder pain, but opined that with these limitations and restrictions, she would be expected to be able to work in a full time capacity. Id. In addition, the external medical review concluded that

plaintiff would be capable of performing another occupation with some restrictions. Id.

Based upon Prudential's review of the medical file along with the findings of Dr. Foye, Prudential determined that the medical records were insufficient to support an inability of plaintiff to perform sedentary duties from October 2002 through April 2003. Therefore, Prudential reasonably denied plaintiff's third appeal and upheld their decision to terminate her claim for LTD benefits effective October 30, 2002. This decision was communicated to plaintiff via correspondence to her counsel dated March 15, 2004. Please see Plaintiff's Appendix "22". This litigation ensued.

## ARGUMENT

## I. STANDARD OF REVIEW

The Policy under which plaintiff seeks recovery explicitly grants Prudential discretionary authority to determine eligibility for benefits. This is apparent within the Plan's definition of disability. The Plan defines Long-term disability (LTD) as:

### How Does Prudential Define Disability?

> You are disabled *when Prudential determines* that:
>
> · you are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury*; and
>
> · you have a 20% or more loss in your *indexed monthly earnings* due to that *sickness* or *injury*.
>
> After 24 months of payments, you are disabled *when Prudential determines* that due to the same sickness or injury, you are unable to perform the duties of *any gainful occupation* for which you are reasonably fitted by education, training or experience.

Please see Plaintiff's Appendix "1".

The language quoted above plainly grants Prudential discretion to determine a participant's entitlement to LTD benefits. It is well-established that, pursuant to Delaware law, when the language of an insurance policy is clear and unambiguous, the parties are bound by the plain meaning of the policy. New Castle County v. Hartford Accident & Indem. Co., 970 F.2d 1267, 1270 (3rd Cir. Del. 1992); Hallowell v. State Farm Mut. Auto Ins. Co., 443 A.2d 925, 926 (Del. 1982). The language in the Policy is clear and unequivocal. Therefore, Prudential has discretionary authority to determine eligibility to disability benefits

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 103 L.Ed. 2d 80, 109 S.Ct.

8

948 (1989) the United States Supreme Court held that if the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits, or to construe the terms of the policy, then the denial of benefits, challenged under ERISA § 1132(a)(1)(B), is **not** to be reviewed *de novo*. *De novo* review only applies absent discretionary language. Id. at 115, see also, Aetna Health Inc. v. Davila, 124 S.Ct. 2488; 159 L.Ed. 2d 312 (June 21, 2004). Pursuant to the Policy, a participant is only disabled within the Policy's definitions when Prudential determines that a participant meets the definition of disability as previously set forth above. Consequently, the standard of review is not whether a different conclusion could have been reached, but if Prudential's determination was arbitrary and capricious, without reason, unsupported by substantial evidence and/or erroneous as a matter law.

Because Prudential both funds and administers the Policy, the applicable arbitrary and capricious standard is arguably applied with a heightened scrutiny. The heightened scrutiny is a "sliding scale" that will allow each case to be examined on its own facts. Pinto v. Reliance Standard Life Ins., 214 F.3d 377, 390 (3rd Cir. 2000). In Pinto, the Court attempted to reconcile the dual commands in Firestone by expecting district courts to consider the nature and degree of apparent conflicts with an outlook in shaping their arbitrary and capricious review of the discretionary determinations of administrators. Id. at 393. However, increased scrutiny is not automatic, and plaintiff has not demonstrated the type of conflict that would raise the court's degree of suspicion. In applying the "heightened arbitrary and capricious review," the Pinto Court analyzed not only whether the result was supported by reason, but also considered the process by which the result was achieved. Id.

Significantly, however, it is well settled that a court may not substitute its own judgment

for that of plan administrators under either the deferential or heightened arbitrary and capricious standard. Stratton v. E.I. DuPont de Nemours & Co., 363 F.3d 250, 256, 2004 U.S. App. LEXIS 6500 (3rd Cir. 2004)*citing* Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc., 298 F.3d 191, 199 (3rd Cir. 2002). Even under the heightened standard, a "plan administrator's decision will be overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan." Stratton, 363 F.3d at 256 *quoting* Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagon of Am., Inc., 222 F.3d 123, 129 (3rd Cir. 2000).

Moreover, Pinto is factually distinguishable from this instant matter in many aspects. First, the administrator in Pinto reversed its own initial determination without any additional medical information. This inconsistent treatment of the same facts was viewed as suspicious. Id. In this instant matter, the claims file evidences that Prudential's determinations were made only after objective and thorough reviews of new medical information provided by the plaintiff at each stage of each appeal. Moreover, unlike the scenario in Pinto where the administrator treated the same facts inconsistently, Prudential's assessments and determinations have remained consistent at each and every stage throughout the entire process regarding plaintiff's LTD benefits at issue. The consistency of such assessments and determinations is outlined in great detail in Prudential's summary judgment motion. Prudential has never reversed its position on the issue of plaintiff's LTD benefits, and solicited additional information from plaintiff at every level of the appeals process.

Secondly, unlike the administrator in Pinto, Prudential never treated the same facts differently. Prudential's determinations at every stage of the appeals process were made after

10

review of new medical information provided by the plaintiff. Each appeal submission was evaluated and determined on its own merits, and Prudential consistently upheld its decision regarding termination of the LTD benefits throughout the entire process. In Pinto, a claims handler for the administrator in Pinto, after reviewing the file, recommended that benefits be reinstated pending further testing. The administrator in Pinto rejected the staff workers' recommendation and instead did the opposite and rejected the recommencement of benefits. Id. Completely contrary to the conduct in Pinto, there is no evidence that any of Prudential's staff opined that plaintiff was eligible for LTD benefits. Therefore, Prudential never rejected a claims handler's recommendation, as there was never any such recommendation made to Prudential.

Finally, the administrator in Pinto relied on a physician's opinion when that physician's specialty was not related to plaintiff's disability. Id. To the contrary, in this instant matter, plaintiff's disability claim is based upon physical complaints and her inability regarding rehabilitation. Consequently, Prudential had Dr. Foye, a doctor specializing in physical medicine and rehabilitation, review plaintiff's medical documentation in addition to the IME conducted by Dr. Bandera. Prudential exhibits no procedural abnormalities or inconsistent treatment of the factual claims on record before this Court. Prudential's claims file thwarts any assertions of irregularities and bias, both of which simply do not exist.

## II. PRUDENTIAL'S DETERMINATION WAS NEITHER ARBITRARY NOR CAPRICIOUS

Despite plaintiff's contentions to the contrary, Prudential's determination that this 43 year-old plaintiff had not been rendered incapable of **any** gainful employment cannot be said to be either arbitrary or capricious. Therefore, notwithstanding plaintiff's misconstrued

11

interpretation of facts and application of relevant case law, Prudential's thorough and calculated determination should be upheld regardless of the degree of scrutiny to which it is subjected.

Although plaintiff claims that <u>Sanderson v. The Continental Casualty Corp.</u>, 279 F.Supp.2d 466 (D.Del. 2003) supports its assertions that Prudential acted in a self-serving manner regarding consideration of the evidence, a simple review of the facts and rationale contained in <u>Sanderson</u> clearly conveys that case to be inapposite to this litigation in that regard. Specifically, the <u>Sanderson</u> Court stressed that defendant relied heavily on the report of its peer review physician who never contacted plaintiff or plaintiff's physicians. <u>Id.</u> at 474. In addition the plaintiff in <u>Sanderson</u>, suffered from fibromyalgia, which the court explained to be a condition which manifests itself primarily through clinical symptoms. Moreover, <u>Sanderson</u> noted that while a diagnosis of fibromyalgia often turns on the subjective information supplied by the patient, this does not render it any less a disability. <u>Id.</u> *citing* <u>Mitchell v. Prudential Health Care Plan</u>, 2002 U.S. Dist. LEXIS 10567, 2002 WL 1284947. at *10, n.6 (D.Del. 2002).Consequently, <u>Sanderson</u> found the paper review of the peer review physician to be even more troubling given these circumstances. <u>Sanderson</u>, 279 F.Supp. at 475. In fact, the <u>Sanderson</u> holding was based largely on the fact that the condition at issue was specifically fibromyalgia, and the fact that defendant's physician did not examine plaintiff personally. <u>Id.</u>

Unlike <u>Sanderson</u>, the case *sub judice* does not involve any issue regarding any fibromyalgia condition. Therefore, many of the concerns voiced by the <u>Sanderson</u> Court based solely on the specificity of that condition are inapplicable here. Furthermore, completely contrary to <u>Sanderson</u>, Prudential had one doctor conduct an independent medical examination of plaintiff, as well as a subsequent file review performed by another doctor.

Another case on which plaintiff heavily relies is Mitchell v. Prudential Health Care Plan, 2002 U.S. Dist. LEXIS 10567 (D.Del. 2002). However, plaintiff's reliance on Mitchell is equally misplaced. Similar to Sanderson, the Mitchell Court noted that defendant relied on doctors who either never treated or examined plaintiff, or relied on a stale diagnosis from a physician that was outdated. Here, however, Prudential had Dr. Bandera perform an independent medical examination of plaintiff, the results of which are outlined at length in Prudential's summary judgment motion. Consequently, Prudential considered all available information, which included documentation from both Dr. Foye and Dr. Bandera, in reaching consistent determinations that supported the termination of plaintiff's LTD benefits.

Furthermore, the doctors who opined the plaintiff to be disabled in Mitchell concluded that he was disabled from **any** occupation. Id. However, all citations made by plaintiff to medical records indicating she may be disabled or unable to work fails to account for the accurate and requisite definition of disability under the policy. Although her own personal doctors may have rendered her disabled, such a definition of disabled may be inconsistent with the "disability" term as defined by the very policy that controls this litigation. Likewise, while plaintiff's own personal doctors opined she was unable to work, there is no evidence whatsoever that such doctors ever concluded that she was unable to perform any gainful occupation as opposed to merely her former employment.

Also dissimilar from Mitchell is the fact that Prudential, contrary to plaintiff's claims, never concealed adverse conclusions. In Mitchell, one of the peer review physicians opined that if the plaintiff's subjective complaints were verified, she would be disabled from all occupations, and that such pain might be verified through a functional capacity test. Clearly, such is not the

13

case here. While Dr. Foye did, indeed, indicate some independent opinions in addition to the determinations made by Dr. Bandera pursuant to the IME, both Dr. Foye and Dr. Bandera concluded that plaintiff was not disabled from any gainful employment. As a result, Dr. Foye even recommended a vocational assessment be performed. However, Prudential was diligent enough to have this vocational assessment performed prior to Dr. Foye's review. It should be noted that the restrictions utilized to perform this vocational assessment were not inconsistent with Dr. Foye's conclusions.

Curiously, plaintiff references Kosiba v. Merck & Co., 384 F.3d 58 (3rd. Cir. 2004) to question the timing of the IME. In Kosiba, the court found that there is evidence of procedural bias in the defendant's intervention in the appeals process to request an IME. Id. at 61. However, the plaintiff in Kosiba, where fibromyalgia was also an issue, had already obtained a Social Security Administration determination that she was totally disabled **before** the defendant request that an IME be performed. Id. at 67, and Kosiba specifically acknowledged the possibility that defendant acted with a good faith belief and that it could resolve perceived ambiguities with such an IME. Id. at 68. The Kosiba court even noted that "[i]ndependent medical examinations are not uncommon in the claims administration world, and this is responsible plan administration that we would not wish to deter." Id. The court in Kosiba went on to articulate that:

> For a responsible fiduciary, we trust that the incentive to collect enough information to make a responsible claims determination will outweigh the incentive to avoid requesting more information in the hopes of maintaining the most deferential standard review. And we trust that courts will not penalize plan administrators for seeking independent medical examinations at appropriate stages of the claims determination process.

Id. Consequently, Kosiba concluded only that a moderately heightened arbitrary and capricious

14

standard of review was appropriate, holding that a significantly heightened arbitrary and capricious standard was not warranted. Id. As a result, Kosiba merely remanded the case so that the District Court could apply the appropriate standard of review. Id. In fact, Kosiba even pointed out that it would be premature to hold that defendant's denial of benefits was impermissible as a matter of law, and echoed that the District Court must base its ultimate determination on the record before the plan administrator, and not its own judgment on whether plaintiff was disabled. Id. at 68-69.

Interestingly, plaintiff's attempts to obtain summary judgment are often contradictory, seeking to play both sides of various arguments. Specifically, plaintiff questions the timing of the IME performed by Dr. Bandera following plaintiff's appeal, then expresses concerns that the vocational assessment, which was performed roughly one month later, may have been premature. Similarly, plaintiff raises doubts about the validity of Dr. Foye's objectivity throughout its summary judgment motion, yet continues to stress that certain opinions of Dr. Foye should have received much more consideration from Prudential. Plaintiff also highlights the fact that Prudential, during the appeals process, incorrectly stated that it received records from Dr. Swartz as opposed to Dr. Swartz' partner, Dr. Rowe, and contends that this insignificant typo or oversight somehow illustrates that Prudential failed to properly consider the content of the records themselves.

Furthermore, plaintiff also focuses on Prudential's explanation for denying plaintiff's LTD benefits at each stage of the appeals process, often indicating that such explanations were invalid or incomplete. However, while plaintiff may not agree with the ultimate reasoning and reliance given by Prudential, as well as by Dr. Bandera and Dr. Foye, it is clear that such

15

rationale was fully and adequately conveyed in each explanation communicated in conjunction with Prudential's determination to terminate LTD benefits, and that the determination, <u>viewed as a whole on the record available at the administrative level</u>, was neither arbitrary nor capricious under any level of scrutiny.

## **CONCLUSION**

While plaintiff may have established that she was unable to return to her previous employment, eligibility for long-term benefits under the policy is contingent upon her inability to perform the activities inherent to <u>any</u> form of gainful employment. Based on the record before it, Prudential's determination that this 43 year-old plaintiff had not been rendered incapable of any gainful employment, cannot be said to be either arbitrary or capricious.

As appears above, plaintiff cannot show that the decision to deny her disability benefits was arbitrary, capricious, or otherwise improper. Moreover, because she alleges there are no outstanding issues of fact and has been unable to establish her case, as the party with the burden of proof at trial, her claim must fail. Not only must plaintiff's motion for summary judgment be denied, judgment must be entered against her and her case dismissed. Defendant therefore respectfully requests that this action be dismissed with prejudice.

BIFFERATO, GENTILOTTI & BIDEN

BY: _____
George T. Lees, Esquire
Delaware Identification No. 3647
1308 Delaware Avenue
The Buckner Building
P.O. Box 2165
Wilmington, DE 19899-2165
(302) 429-1900
Attorneys for Defendant

                                  The Prudential Insurance Company of America

OF COUNSEL:
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Jonathan Dryer, Esquire
The Curtis Center, Suite 1130 East
Independence Square West
Philadelphia, PA 19106
(215) 627-6900

17