LEXSEE 2002 U.S. DIST. LEXIS 10567

MARY M. MITCHELL, Plaintiff, v. PRUDENTIAL HEALTH CARE PLAN, a foreign insurance company, Defendant.

C.A. No. 01-331 GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2002 U.S. Dist. LEXIS 10567

June 10, 2002, Decided

**DISPOSITION:** Defendant's Motion for Summary Judgment was DENIED. This matter was remanded to Prudential, the claims administrator, to take further action consistent with this opinion.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant insurer filed a motion for summary judgment on claims by plaintiff insured which alleged violations of the Employee Retirement Income Security Act, *29 USCS § 1001* et seq., and that the insured was improperly denied disability benefits by the insurer, the provider of benefits under insured's benefits plan.

**OVERVIEW:** The insurer argued that its decision to deny benefits was not arbitrary or capricious because the medical evidence available at that time supported a finding that the insured was not permanently disabled. The insured responded that the insurer was not given discretion under the plan, asked the district court to review the decision de novo. The district court found that the insurer was not entitled to summary judgment. Because the insurer both funded the plan and determined eligibility for benefits, the district court employed a "heightened" arbitrary and capricious standard of review and determined that the insurer's denial of benefits was arbitrary and capricious based upon the insurer's self-serving use and analysis of the available evidence. Notably, the insurer appeared to give more weight to the evidence that favored the refusal of benefits, according great weight to the insurer's doctors' conclusions that the insured could work, despite the fact that these doctors had neither treated nor examined the insured but merely reviewed her medical records.

**OUTCOME:** Defendant's motion for summary judgment was denied.

**CORE TERMS:** pain, arbitrary and capricious, fibromyalgia, fiduciary, diagnosis, occupation, standard of review, subjective, plan administrator, doctor, heightened, sedentary, medical evidence, self-dealing, eligibility, diagnose, disease, patient, confer, medical information, able to perform, functional, duty, disability, deference, summary judgment, de novo, administrator, self-serving, reliability

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN1] Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant bears the burden of proving that there are no genuine issues of material fact.

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN2] Pursuant to a motion for summary judgment, Fed. R. Civ. P. 56(c), a dispute is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-movant, and a fact is material if it might effect the outcome of the suit. On any motion for summary judgment, the court must view the evidence in

Case 1:04-cv-00351-SLR-LPS    Document 29-4    Filed 06/24/2005    Page 2 of 12

Page 2
2002 U.S. Dist. LEXIS 10567, *

a light most favorable to the non-movant and draw all reasonable inferences in his favor.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN3] When considering a plan administrator or fiduciary's denial of benefits under Employee Retirement Income Security Act, 29 U.S.C.S § 1001 et seq., district courts are generally instructed to employ de novo review. However, where plan terms grant discretion to the plan administrator or fiduciary to determine a claimant's eligibility for benefits, the decision is subject to review under an "arbitrary and capricious" standard (i.e., a determination of whether the plan administrator abused its discretion in reaching its decision). Where discretion is reserved, the court may overturn the decision only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law. However, where the fiduciary's decision is potentially clouded by a conflict of interest, such as where a plan administrator also funds the plan it administers, the conflict must be considered in assessing the amount of deference to be given to the administrator's decision. Thus, in those circumstances, a modified or "heightened" arbitrary and capricious standard of review is appropriate.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN4] A denial of benefits challenged under the Employee Retirement Income Security Act, 29 U.S.C.S § 1001 et seq., is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN5] To the extent that benefits under an employee benefit plan are provided or administered by an insurance company that company shall be the "appropriate named fiduciary" for purposes of this section. 29 C.F.R. § 2560.503-1 (2000).

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
[HN6] Pursuant to claims under the Employee Retirement Income Security Act, 29 U.S.C.S § 1001 et seq., a heightened scrutiny type of arbitrary and capricious review is required when an insurance company is both plan administrator and funder.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
[HN7] Pursuant to claims under the Employee Retirement Income Security Act, 29 U.S.C.S § 1001 et seq., under a standard arbitrary and capricious review, the court would be limited to determining whether the fiduciary's decision was without reason, unsupported by evidence, or erroneous as a matter of law. The fiduciary's decision would be entitled to substantial deference. Under the "heightened" arbitrary and capricious standard, however, the court need not give complete deference to the fiduciary's decision to deny benefits. Indeed, rather than simply determining whether the result was supported by rational facts, the court must consider the process by which the result was achieved. The relevant record on appeal is the evidence before the Administrator at the time of his final denial.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN8] A fiduciary's decision process may not be entitled to deference if it reverses an earlier decision without receiving any additional medical information. Additionally, the court need not accept the decision of a fiduciary that uses a self-serving approach to the evidence that selectively relies upon the evidence that supports a denial of benefits but rejects the evidence that supports the continuation of benefits. Finally, along similar lines, if the fiduciary appears unwilling to listen to advice from its staff that recommends continuation of benefits, the decision may be questioned.

**COUNSEL:** [*1] For MARY M. MITCHELL, plaintiff: Nicholas H. Rodriguez, Noel E. Primos, Schmittinger & Rodriguez, P.A., Dover, DE.

For THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, MILFORD LONG TERM DISABILITY PLAN, defendants: Jan Anthony Taets van Amerongen, Jr., Reed Smith LLP, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory Moneta Sleet

**OPINION:**

## MEMORANDUM AND ORDER

### I. INTRODUCTION

On April 6, 2001, the plaintiff, Mary Mitchell, filed suit against Prudential in the Superior Court for the State of Delaware (Kent County). On May 21, 2001, the case was removed from state court to the United States District Court for the District of Delaware. (D.I. 1.) The plaintiff's amended complaint, filed on June 15, 2001, alleges violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. (D.I. 9.) Specifically, Mitchell asserts that she was improperly denied disability benefits by Prudential, the provider of benefits under Mitchell's benefits plan.

Presently before the court is the defendant's motion for summary judgment which argues that the plan language gives Prudential discretion to deny benefits, [*2] thereby requiring this court to employ an arbitrary and capricious standard of review. Prudential urges the court to find that its decision to deny benefits was not arbitrary or capricious because the medical evidence available at that time supported a finding that Mitchell was not permanently disabled.

The plaintiff responds that Prudential is not given discretion under the plan, and asks the court to review the decision *de novo*. In the alternative, Mitchell argues that even if the court declines to review the decision *de novo*, it must employ a "heightened" arbitrary and capricious standard because Prudential funds the plan and is the plan's fiduciary. In any event, Mitchell asserts that Prudential's motion fails under any standard of review because it selectively chose to focus on the medical opinions that were favorable to Prudential while ignoring medical evidence that suggested Mitchell might be permanently disabled. Prudential responds that none of the medical information that supports Ms. Mitchell's claim was presented before the initial denial of benefits.

Upon review of the relevant documents and case law, the court finds that the defendant is not entitled to summary [*3] judgment. The court is persuaded by the defendant's contention that Prudential is implicitly granted discretion under the Plan and therefore, an arbitrary and capricious standard of review must be employed. However, because Prudential both funds the plan and determines eligibility for benefits, the court must employ a "heightened" arbitrary and capricious standard of review. Under the "heightened" arbitrary and capricious standard of review, the court finds that Prudential's decision to deny benefits to Mitchell was arbitrary and capricious based upon Prudential's self-serving use and analysis of the available evidence. The court will therefore deny the defendant's motion for summary judgment on this claim and remand to Prudential with instructions to take action consistent with this opinion.

### II. FACTS

Mary Mitchell was employed by Milford Memorial Hospital ("Milford") in Delaware as an operating room technician. Milford sponsored an employee benefits plan Prudential is the insurer and underwriter of the plan. The plan names Milford as the Plan Administrator (D.I. 35 at A96.) Prudential is referred to as the provider of benefits. (*Id.* at A97.) Prudential was also responsible [*4] for determining eligibility for benefits.

In October 1996, Mitchell applied for disability benefits with Prudential, citing, *inter alia*, back pain, leg pain, and sciatic pain. She was 51 years old at the time. In connection with this request for benefits, she asked Dr. Richard DuShuttle to submit an attending physician's statement ("APS") on her behalf. Mitchell first complained to Dr. DuShuttle about pain in the left hip with radiating pain in the groin and right buttock on June 18, 1996. Dr. DuShuttle requested a bone scan which indicated that Mitchell might have degenerative arthritis in the left foot and left wrist. Dr. DuShuttle's MRI of the lumbar spine also indicated mild degenerative disc disease, mild spinal canal stenosis, and minimal right line disc protrusion in the lower lumbar region. Based on these evaluations, Dr. DuShuttle's APS dated October 23, 1996 indicated that Mitchell was capable of performing light duty work four hours each day (*Id.* at A128-29).

Prudential initially denied Mitchell's claim for benefits on October 29, 1996. (*Id.* at A130.) Prudential's policy for determining benefits stated:

> Total Disability exists when Prudential determines [*5] that all of these conditions are met:
> (1) Due to sickness or accidental injury, both of these are true:
>> (a) You are not able to perform, for wage or profit, the material and substantial duties of your occupation.
>> (b) After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience. The Initial

Case 1:04-cv-00351-SLR-LPS    Document 29-4    Filed 06/24/2005    Page 4 of 12

Page 4
2002 U.S. Dist. LEXIS 10567, *

> Duration is shown in the Schedule of Benefits.
> (2) You are not working at any job for wage or profit.
> (3) You are under the regular care of a doctor.

(*Id* at A74; A130.) In October 1996, Prudential denied benefits because it believed that Mitchell was currently employed at a local bowling alley. However, this was later found to be untrue and Mitchell was initially awarded benefits effective November 28, 1996. (*Id* at A139-40.) The benefits were scheduled to terminate on November 28, 1998, the end of Mitchell's "Initial Duration" period. (*Id* at A264.)

During Mitchell's Initial Duration period, Prudential continued to request medical information regarding her condition. Prudential sent a questionnaire [*6] to Dr. Harvey Lee, one of Mitchell's treating physicians. On February 19, 1997, Dr. Lee's responses indicated that Mitchell could not sit or stand for more than fifteen minutes at a time and could lift no more than fifteen to twenty pounds. (*Id* at A132-33.) Dr. Lee indicated that there were no objective findings to support this conclusion. However, Dr. Lee also indicated that Mitchell was being treated for her back problems and it was "unlikely" that she would be able to work while this treatment continued. (*Id*)

Prudential also arranged for Mitchell to be evaluated by Dr. Tutse Towne in May 1997. Dr. Towne's May 12, 1997 letter stated:

> Based on my examination today, Mrs. Mitchell should be able to lift at least 10-15 pounds without any difficulty. She should also be able to twist from side to side. Furthermore, she should be able to perform [a] sedentary occupation full time, as long as her job description is flexible enough to minimize prolonged sitting or prolonged standing.

(*Id* at A144.)

Dr. Garrett Herring, Mitchell's treating chiropractor, also submitted an APS dated May 26, 1998. Dr. Herring's APS noted that Mitchell's daily activities consisted [*7] of "normal activities of daily living w/restrictions being [sic] no extended duration due to pain." (*Id* at A147.) Dr. Herring opined that if Mitchell could find a job that satisfied her wish for no increased pain with increased activity, "she might be able to work." (*Id*)

Mitchell also submitted another APS from Dr. Lee which was dated June 17, 1998. Dr. Lee's second APS reiterated the diagnosis of lower back pain. (*Id* at A148.) However, when asked about Mitchell's prospects for returning to work, Dr. Lee indicated that she was "unable to do any prolonged activity, manual or physical." (*Id*)

Mitchell was seen by Dr. Tonwe again in November 1998. Dr. Towne's second evaluation dated November 2, 1998 again diagnosed Mitchell with chronic back pain. Dr. Tonwe repeated his earlier conclusion about Mitchell's ability to work, stating, "It is my opinion that her condition is such that she should be able to work with some restrictions." (*Id* at A150.) In a follow-up note dated November 9, 1998, Dr. Tonwe stated that Mitchell was "disabled from her own occupation at this time, but she is not disabled from any occupation." (*Id* at A151.)

On November 25, 1998, Prudential [*8] wrote Mitchell to advise her that her disability benefits would be terminated effective November 27, 1998. In reaching this decision, Prudential acknowledged that Mitchell complained of back pain, arthritis, and fibromyalgia n1 Prudential stated that although Drs. Lee and Herring both indicated that Mitchell could not perform strenuous activity, they did not conclude that she could not work. Prudential also mentioned Dr. Tonwe's conclusion that Mitchell should be able to work. Based on this information, Prudential stated:

> While we understand that you are experiencing pain which does require ongoing treatment, your condition is not so severe as to render you totally disabled from any occupation. Although your condition may prevent you from perform [sic] your own occupation and other occupations which require prolonged physical activity, you could perform a job which allows you to change positions as needed to relieve your pain.

(*Id* at A153.)

---

n1 Although this is the first reference the court found to fibromyalgia in the record, Mitchell apparently mentioned fibromyalgia in one of her previous claims forms.

---

[*9]

By letter dated February 16, 1999, Mitchell advised Prudential that she wanted to appeal the decision. In her letter, she stated that did not have adequate notice of the termination of benefits. She also explained, in great detail, that she was experiencing substantial pain that

limited her ability to function. She stated that although she could do some limited laundry work (as long as she did not lift baskets), she could not vacuum, make beds, iron, scrub or sweep, and that there were several days when she could not do anything at all due to pain. (*Id.* at A156.) She referred to an evaluation by Barker Therapy and Rehabilitation. The physical therapist noted that "Mary [Mitchell] continues with weakness and pain and loss of function and may benefit from continued physical therapy to achieve maximum functional benefit." (*Id.* at A166.)

In response to Mitchell's letter, Prudential stated it would review the information Mitchell submitted, and encouraged her to submit any further information. On March 12, 1999, Prudential advised Mitchell that it was upholding its decision to terminate her benefits. The letter did not mention Dr. Lee or Dr. Herring. However, it did mention [*10] the results of the November 9, 1998 evaluation of Dr. Tonwe. Prudential did consider the physical therapy records from Barker Therapy. Prudential noted that Barker's evaluation indicated that Mitchell was "limited in [her] ability to bend, lift/carry, and grip." (*Id.* at A171.) However, Prudential stated that even with these limitations, Mitchell should be able to function in sedentary or light activities. Thus, Prudential affirmed its decision, but extended the benefits denial date to March 31, 1999 to compensate for any lack of notice. Prudential also advised Mitchell of her right to appeal their determination.

Mitchell advised Prudential of her desire to appeal the decision in a letter dated June 11, 1999. In her letter, Mitchell reiterated her complaints of pain and informed Prudential that she was unable to sleep and was frequently fatigued. (*Id.* at A174.) On July 9, 1999, Prudential advised Mitchell that her file would be reviewed again and that she should submit any information that she wanted to be considered. Mitchell replied that there was no further information that she wished to include. Therefore, on July 22, 1999, Prudential advised her that second appeal was [*11] denied. (*Id.* at A193-95.)

On November 22, 1999, Mitchell requested a further and final appeal of the decision. She attached two APS forms with her request. A May 5, 1999 APS by Dr. Lee repeated the diagnosis of severe lower back pain. In the APS, Dr. Lee reiterated that Mitchell was "unable to sit, stand, walk, or run for [an] extended period of time." (*Id.* at A183.) In particular, Dr. Lee noted that Mitchell could not stand for more than 15 minutes. He stated that due to the chronic lower back pain, Mitchell was "unable to do any meaningful regular activity" and would also be "unable to return to work." (*Id.* at A184.) However, an APS from Dr. Herring dated June 17, 1999 indicated that although Mitchell's back problems were "permanent," and she was "unable to perform activities of daily living without] severe pain," she should be able to perform sedentary work. (*Id.* at A176.)

On December 13, 1999, Prudential advised Mitchell that it could not complete its evaluation of her appeal without the additional medical information she previously indicated that she would provide. On August 7, 2000, Mitchell responded and indicated that she still suffered from severe back [*12] pain and fibromyalgia, which claimed she had "continued to get worse in the past 1 1/2 years." (*Id.* at A208.) She also indicated that she had gone to Dr. Charles Wagner for a second opinion, and enclosed the doctor's evaluation. In a letter dated July 17, 2000, Dr. Wagner stated that Mitchell had fibromyalgia and Lyme Disease. Dr. Wagner stated that Mitchell therefore had a "chronic disability" and was "unable to hold down a job." (*Id.* at A210.) Dr. Wagner further stated, "Physical examination confirms chronic fibromyalgia with point tenderness, muscle fatigue on minor exertion." (*Id.*) Dr. Wagner concluded, "The patient has remained the same since 1996. She cannot maintain a job in her, or other, professions." (*Id.*)

During the appeal process, Prudential sent the entire Mitchell file to Dr. William Anthony for review and analysis. Dr. Anthony summarized the medical history and noted that the bone scan and the MRI showed degenerative arthritis and mild degenerative disc disease, respectively. Additionally, Dr. Anthony noted that the patient appeared to suffer from several maladies, most recently Lyme disease. When asked if there was medical evidence on file to support [*13] an impairment that would render Mitchell unable to perform any job since April 1, 1999, Dr. Anthony stated, "There are numerous subjective statements in this chart, but there are no definite evaluations of the patient which would suggest that objectively Ms. Mitchell would be unable to perform the duties of *any job* since 04/01/99." (*Id.* at A224.) Despite his finding that there were no objective statements to support Mitchell's claims, Dr. Anthony noted that "however, there is a very concerning letter from Charles G. Wagner, M.D. dated 07/01/00 in which numerous subjective statements of report [sic] are made with regard to plaintiff's condition and if by physical examination or functional capacity evaluation those allegations or statements can be substantiated it would be my belief that the patient would be totally disabled from any occupation." (*Id.* at A225.) Prudential never requested such an examination. Dr. Anthony further stated that although Dr. Wagner's evaluation did not appear objective, "barring a functional capacity evaluation to the contrary we must respect Dr. Wagner's judgment in this matter." (*Id.* at A226.) Finally, although Dr. Anthony considered the [*14] opinions of both Dr. Wagner and Dr. Tonwe, he noted that Dr. Wagner's

Case 1:04-cv-00351-SLR-LPS    Document 29-4    Filed 06/24/2005    Page 6 of 12

Page 6
2002 U.S. Dist. LEXIS 10567, *

evaluation "seems to describe a patient with many more and more serious complaints than that noted in Dr. Tonwe's evaluations of 11/98." (*Id.*)

Prudential also asked Dr. Joel Moorhead, a medical director at Prudential, to review the file. Dr. Moorhead stated that although the MRI appeared to show changes in the back, these changes were related to age, were not usually symptomatic, and should not prevent Mitchell from working. Dr. Moorhead did not provide any specific facts in support of these findings. Dr. Moorhead also stated that the Lyme Disease diagnosis did not appear to be well supported. He did not offer a rationale for this conclusion, however. He also noted that Dr. Tonwe and Dr. Anthony's conclusions that Mitchell could not work at any job were well supported. Dr. Moorhead did not offer any reasons for this judgment either.

On January 29, 2001, Prudential advised Mitchell that it had reviewed her claim and decided not to reinstate her benefits. Prudential first summarized all of the medical evidence in the file, including Ms. Mitchell's descriptions of her pain and limitations. Prudential then stated: [*15]

> The documentation submitted on appeal reflects that Ms. Mitchell has been diagnosed with Lyme Disease and has been under the care of Dr. Shoemaker. The diagnosis of Lyme disease does not appear to be well-established. There is no indication of inflammatory arthritis and a normal neurological exam. Additionally, the diagnosis of Lyme Disease appears to be made in July 2000 from Dr. Wagner. Any new development of a disorder would not be covered as Ms. Mitchell's claim terminated effective April 1, 2000.
>
> Ms. Mitchell and her physicians have indicated that Ms. Mitchell's conditions prevent her from performing the duties of a sedentary occupation. Based on our review of the information in the file, we have determined that at the time LTD benefits were terminated, documentation does not support a Totally Disabling condition that would render Ms. Mitchell unable from performing [sic] job duties [in] a position classified as sedentary. The 1996 MRI of the lumbar spine shows degenerative changes on lumbar spine which are age-related changes. The imaging findings are not sufficiently severe enough to prevent returning to another occupation.
>
> Dr. Tonwe opined that Ms. Mitchell [*16] would be able to perform sedentary work. Dr. Anthony opined that the documentation did not support an impairment that would prevent Ms. Mitchell from performing the duties of another occupation.

(*Id.* at A265-65.) Prudential's statement that the Lyme disease diagnosis was not well established echoes Dr. Moorhead's findings, but Prudential did not address the fibromyalgia aspect of the claim. Moreover, Prudential never addressed Dr. Anthony's statements that Mitchell's condition might have deteriorated since seeing Dr. Tonwe or that if her subjective complaints of pain were objectively verified (i.e. through a functional capacity test), she would be totally disabled from any occupation. Based on this reasoning, Prudential determined that Mitchell could perform sedentary work, specifically as a hospital admitting nurse. After a request for further review was denied, Mitchell filed this action.

### III. SUMMARY JUDGMENT STANDARD

[HN1] Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the movant is entitled to [*17] judgment as a matter of law. *Fed. R. Civ. P. 56(c)*; *see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340-41 (3d Cir. 1990)*. The movant bears the burden of proving that there are no genuine issues of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 n.10 (1986)*. [HN2] A dispute is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-movant, and a fact is material if it might effect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. Finally, on any motion for summary judgment, the court must view the evidence in a light most favorable to the non-movant and draw all reasonable inferences in his favor. *Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998)*. With these principles in mind, the court will consider the appropriate standard of review to be applied in this case.

### IV. DISCUSSION

#### A. The Standard of Review

[HN3] When considering a plan administrator or fiduciary's denial of benefits under ERISA, district courts

are generally instructed to employ *de novo* review. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989). [*18] However, where plan terms grant discretion to the plan administrator or fiduciary to determine a claimant's eligibility for benefits, the decision is subject to review under an "arbitrary and capricious" standard (i.e., a determination of whether the plan administrator abused its discretion in reaching its decision). *See Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 (3d Cir. 1997) Where discretion is reserved, the court may overturn the decision only if it is "'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Abnathya v. Hoffman-LaRoche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993) (citations omitted). However, where the fiduciary's decision is potentially clouded by a conflict of interest, such as where a plan administrator also funds the plan it administers, the conflict must be considered in assessing the amount of deference to be given to the administrator's decision. *See Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 387 (3d Cir. 2000) Thus, in those circumstances, a modified or "heightened" arbitrary and capricious standard of review is appropriate. *See id. at 390-92* [*19]

Mitchell urges the court to apply a *de novo* standard of review because (1) Prudential is not the plan administrator and (2) the terms of the plan do not confer discretion upon Prudential. The court is not persuaded by either contention. First, Prudential need not be a plan administrator for its decision to be subject to an arbitrary and capricious standard of review. The Supreme Court has stated that "[HN4] A denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator *or fiduciary* discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115 (emphasis added). Although Prudential was not the plan administrator, it was a fiduciary of the plan. The applicable federal regulations in effect during Mitchell's claim and appeal state, "[HN5] To the extent that benefits under an employee benefit plan are provided or administered by an insurance company . . . that company shall be the 'appropriate named fiduciary' for purposes of this section." *29 C.F.R. § 2560.503-1* (2000). n2 As an insurance company providing [*20] benefits, Prudential was an "appropriate named fiduciary" under the applicable regulations. Thus, under the *Firestone* analysis, given Prudential's status as a fiduciary, the plan's failure to name Prudential as the plan administrator does not require the court to employ *de novo* review.

n2 The 2001 revisions to this section of the CFR do not contain this language. However, the revised section only applies to claims filed after January 1, 2002. *See* 29 CFR § 2560.501-3(o)(1) (2001). Since Mitchell's claim predates the revised language, the court will be guided by use of the language in effect during her claim and appeal.

Mitchell further argues that the plan terms do not give Prudential discretion. The plan states that "Total disability exists when Prudential determines that all of these conditions are met . . ." The court agrees with the plaintiff that this language does not explicitly confer discretion upon Prudential. However, "although an express reservation of discretion [*21] is preferred, discretion may reasonably be inferred from the policy language." *Russell v. Paul Revere Life Ins. Co.*, 148 F. Supp. 2d 392, 400 (D. Del. 2001) (collecting cases). Thus, the fact that the grant is not explicit will not prevent the court from considering whether Prudential has been given discretion under the plan.

The defendant argues that the use of the word "determines" is sufficient to confer discretion upon Prudential. The defendant submits that the normal meaning of the word determine is "to settle a controversy about . . . to come to a decision concerning as the result of investigation or reasoning . . . to settle or decide by choice of possible alternatives." (D.I. 34 at 18 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY n.p. (1986))). The plaintiff responds that although the defendant's definition is not incorrect, determine can also mean "to reach a decision, as after consideration or calculation," and calculation, such as in math, does not necessarily confer discretion. (D.I. 37 at 11 (quoting WEBSTER'S II NEW RIVERSIDE DICTIONARY n.p. (1984))). n3

n3 The plaintiff further asserts that even if discretion need not be explicitly given, words such as "proof satisfactory" or "substantial proof" must appear in the plan before such discretion can be inferred. The court disagrees. Although many courts have used this language to support a finding of discretion, *see Russell*, 148 F. Supp. 2d at 400 (collecting cases), this is by no means the only language from which a grant of discretion can be inferred. *See, e.g., Ernest v. Plan Administrator of the Textron Insured Benefits Plan*, 124 F. Supp. 2d 884, 890-91 (M.D. Pa. 2000) (finding discretion in the absence of "proof satisfactory or substantial proof language"); *Westover v. Metropolitan Life Ins.*

*Co., 771 F. Supp. 1172, 1174 (M.D. Fla. 1991)* (same).

[*22]

The court finds that under either definition, the usual meaning of the word "determines" implies the exercise of discretion. The definitions supplied by both parties suggest that a determination is reached only after deliberation of some sort. The ability to think or deliberate prior to making a decision is the touchstone of discretion. The court therefore finds that the plan language is sufficient to confer discretion upon Prudential. *See Eley v. Boeing Co., 945 F.2d 276, 278 n. 2 (9th Cir. 1991)* (finding discretion where plan language stated, "The Company shall *determine* the eligibility of a person for benefits under the plan . . .")(emphasis added). Since Prudential has discretion, *de novo* review is inappropriate. Therefore, the court will review Prudential's decision under an arbitrary and capricious standard.

However, as previously stated, there are two types of arbitrary and capricious review - the standard level of review and a "heightened" standard of review that may be employed where there is a conflict of interest. *See Russell, 148 F. Supp. 2d at 400.* Such a conflict may arise where the fiduciary also funds the plan. *See Pinto, 214 F.3d at 387* [*23] ("We are persuaded that [HN6] heightened scrutiny is required when an insurance company is both plan administrator and funder.") In the present case, Prudential both funds the plan and determines eligibility for benefits. Thus, Prudential's actions must be subjected to the "heightened" arbitrary and capricious standard of review. n4 The court will now consider whether Prudential's decision was arbitrary and capricious under this standard.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 The defendant agrees that this is the appropriate standard of review. ("In light of the fact that Prudential both funds the Plan and administers claims under the Plan, this court may apply a "heightened" arbitrary and capricious standard of review.") (D.I. 39 at 9.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**B. Application to the Facts**

[HN7] Under a standard arbitrary and capricious review, the court would be limited to determining whether the fiduciary's decision was without reason, unsupported by evidence, or erroneous as a matter of law. *See id. at 393.* The fiduciary's decision would be entitled to substantial [*24] deference. *See id.* Under the "heightened" arbitrary and capricious standard, however, the court need not give complete deference to the fiduciary's decision to deny benefits. *See id.* Indeed, rather than simply determining whether the result was supported by rational facts, the court must consider the process by which the result was achieved. *See id.* The court may consider all evidence available to Prudential during the entire appeals process. *See Mitchell, 113 F.3d at 440* ("The relevant record on appeal is the evidence before the Administrator at the time of his final denial . . .").

The Third Circuit has suggested that the presence of certain factors can cause a court to find fault with a fiduciary's process. [HN8] A fiduciary's decision process may not be entitled to deference if it reverses an earlier decision without receiving any additional medical information. *See id.* Additionally, the court need not accept the decision of a fiduciary that uses a self-serving approach to the evidence that selectively relies upon the evidence that supports a denial of benefits but rejects the evidence that supports the continuation of benefits. *See id.* Finally, [*25] along similar lines, if the fiduciary appears unwilling to listen to advice from its staff that recommends continuation of benefits, the decision may be questioned. *See id.*

In the present case, the first factor is not an issue because Prudential solicited further medical information from Mitchell at each stage of the appeal. However, the second factor which instructs the court to consider whether the fiduciary was self-serving in its consideration of the evidence is more problematic. In its final denial of benefits, Prudential appeared to give more weight to the evidence that favored the refusal of benefits. For instance, Prudential accorded great weight to Dr. Tonwe and Dr. Anthony's conclusions that Mitchell could work. In contrast to its reliance on the findings of its own doctors, Prudential mentioned, but did not fully discuss, credit, or reconcile the contrary opinions of other doctors such as Dr. Lee and Dr. Wagner who concluded that Mitchell was disabled from any occupation. Prudential also relied heavily (if not solely) upon Dr. Moorhead's findings regarding the reliability of the medical diagnoses. (It is worth noting that Drs. Tonwe, Anthony, and Moorhead were all connected [*26] to Prudential in some manner.)

Although Prudential may have doubted the reliability of the conclusions or diagnoses of Mitchell's doctors, there is nothing in the record to indicate that the opinions of the Prudential physicians were any more supported or reliable. The court notes that unlike Mitchell's doctors, neither Dr. Anthony nor Dr. Moorhead treated or examined Mitchell - they merely reviewed her medical records. Dr. Moorhead's conclusions regarding the reliability of Mitchell's Lyme Disease and back pain diagnoses are conclusory and completely unsupported by any testing or findings.

Although Dr. Tonwe did examine Mitchell, Prudential did not consider the fact that his last examination took place in 1998, more than two years prior to the final denial. Given the staleness of Dr. Tonwe's diagnosis and the fact that medical conditions can worsen over time, Dr. Wagner's more recent diagnosis was entitled to more weight than Prudential accorded it. Since none of the evidence in the file was of surpassing reliability, there was no rational reason to simply give more weight to the Prudential physician's conclusions without a thorough and fully supported discussion of why the conclusions [*27] of Mitchell's doctors should be rejected. n5

    n5 The court notes that Prudential implies that certain irregularities or abnormalities with Dr. Herring's June 17, 1999 APS led it to question that document. The court need not consider this argument because that particular APS had very little bearing on the final denial of benefits and even less bearing on the court's analysis regarding self-dealing.

Stronger evidence of Prudential's "self-dealing" is found in its treatment of Dr. Anthony's adverse conclusions. Although Dr. Anthony suggested that Dr. Tonwe's examination results might be stale and Dr. Wagner's conclusions should be accorded some deference as a result, Prudential never mentioned or explained this finding in its final denial. It was completely ignored. Similarly disregarded was Dr. Anthony's statement that if Mitchell's subjective complaints of pain were verified, she would be disabled from all occupations. Prudential never explained why it was rejecting this conclusion. In fact, this conclusion is [*28] not even mentioned in the denial letter. Conversely, Dr. Anthony's conclusion that Mitchell could work is prominently featured and relied upon in the termination of benefits. This apparent willingness to use the helpful portions of Dr. Anthony's testimony while completely ignoring the portions that would support the continuance of benefits is some evidence that Prudential was acting in self-interest. *See Pinto, 214 F.3d at 394* (noting that crediting one helpful portion of the doctor's testimony while discrediting unhelpful portions "raised likelihood of self-dealing").

Not only did Prudential fail to address Dr. Anthony's assertions regarding Mitchell's subjective complaints of pain, Prudential did not follow his suggestion that Mitchell's pain might be verified through a functional capacity test. This failure to follow advice from its own staff fits squarely into the third factor identified in *Pinto*, and could also support a finding of self-dealing under the second factor.

In its denial, Prudential also noted that there was no evidence to support a disability "at the time" benefits were denied. This appears to refer to the fact that the Lyme Disease diagnosis [*29] was first made in June 2000. Nevertheless, Prudential ignored the fact that Dr. Wagner diagnosed Mitchell with Lyme Disease *and* fibromyalgia. Although Prudential is correct that the Lyme Disease diagnosis first appeared in the record in 2000, Prudential itself mentioned the possibility of fibromyalgia as early as its November 1998 denial letter. Therefore, fibromyalgia was known "at the time" benefits were denied. Thus, to the extent that Dr. Wagner's findings were dependent upon a fibromyalgia diagnosis, it cannot be said that the fibromyalgia was a new impairment or disability. However, Prudential never considered or rejected the possibility that Mitchell's symptoms might be related to the fibromyaligia. Prudential's unwillingness to consider this possibility is further evidence of self-dealing.

The court further notes that Prudential placed considerable weight on the lack of "objective evidence" to support Mitchell's complaints of pain. Conversely, Mitchell's subjective complaints of pain, while mentioned, were entirely discounted. For instance, although Prudential relied on Dr. Moorhead's finding that the MRI showed only non-symptomatic, age related changes, Prudential did [*30] not consider how Mitchell's subjective complaints of pain contradicted this conclusion. The court finds that this strong emphasis on objective evidence to the resulting exclusion of the subjective evidence was incorrect. In this determination the court draws guidance from precedent in the area of social security. *See Torix v. Ball Corp., 862 F.2d 1428, 1431 (10th Cir. 1988)* (noting that although social security cases are not precedential in the ERISA context, they can be used for guidance). The social security disability regulations require that subjective complaints of pain be given great weight as long as there is objective evidence of some condition that could reasonably produce such pain. *See Krizon v. Barnhart, 197 F. Supp. 2d 279 (W.D. Pa 2002), currently reported at 2002 WL 662267, at *9.*

In the present case, there was objective medical evidence in the form of an MRI to support Mitchell's back pain diagnosis. Although subjective complaints of pain may be disregarded if the objective findings are contradicted by medical evidence, *see id.*, in the present case every doctor confirmed that the MRI showed a disturbance [*31] in the lower back. The only doctor who challenged the MRI was Dr. Moorhead who stated that the back problems were consistent with age and should be asymptomatic. Not only is Dr. Moorhead alone in this conclusion but given his ties to Prudential, his failure to examine the patient, and the lack of support for

his conclusions, his analysis should not have been accorded such great weight. Additionally, Dr. Wagner stated, "*Physical examination* confirms chronic fibromyalgia with point tenderness, muscle fatigue on minor exertion." (D.I. 35 at A210.) (emphasis added). n6 The record contains no evidence contradicting this diagnosis. Thus, there was no reason for Prudential to ignore the fact that the objective findings supported a diagnosis of a back injury or fibromyalgia which could produce Mitchell's subjective complaints of pain.

> n6 The court notes that although Dr. Wagner's refers to "physical examination," the record contains no reference to any objective tests he used to make the fibromyalgia diagnosis. However, medical literature indicates that, at present, there are no tests available to diagnose this condition. *See* WebMdHealth, *Fibromyalgia - Topic Overview*, at http://my.webmd.com/encyclopedia/article/1673.50846 (last visited May 17, 2002) ("Fibromyalgia can be difficult to diagnose because its symptoms are similar to many other disorders and diseases. There are no lab tests to diagnose fibromyalgia. It is often diagnosed after other conditions have been ruled out."). The diagnosis is consistent with Mitchell's symptoms of fatigue and sleeplessness and was made during a time consistent with her report of those symptoms. *See id.* Therefore, the court does not find it fatal that no objective tests verified the fibromyalgia diagnosis.

[*32]

For all of the above reasons, the court finds that Prudential impermissibly used evidence that supported the denial of Mitchell's benefits while ignoring or failing to satisfactorily explain its rejection of evidence supporting reinstatement of Mitchell's benefits. Based on these actions, the court finds that Prudential engaged in impermissible self-dealing in its consideration of the evidence. The court therefore finds that under a "heightened" arbitrary and capricious standard, Prudential's decision was arbitrary and capricious.

## V. CONCLUSION

For all of the above reasons, the court finds that Prudential's decision to terminate Mitchell's benefits was arbitrary and capricious due to the self-serving nature of Prudential's decision-making process. Therefore, the court will remand this case to Prudential for further proceedings consistent with this opinion.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

> 1. The Defendant's Motion for Summary Judgment (D.I. 33) is DENIED.
>
> 2. This matter is remanded to Prudential, the claims administrator, to take further action consistent with this opinion.

Dated: June 10, 2002

Gregory M. Sleet

UNITED STATES DISTRICT [*33] JUDGE

Copyright 2005 SHEPARD'S - 6 Citing references

**Mitchell v. Prudential Health Care Plan, 2002 U.S. Dist. LEXIS 10567 (D. Del. June 10, 2002)**

*SHEPARD'S(R) Signal: Positive treatment is indicated*
Restrictions: *Unrestricted*
FOCUS(TM) Terms: *No FOCUS terms*
Print Format: *FULL*
Citing Ref. Signal: *Hidden*

## SHEPARD'S SUMMARY

*Shepard's* FULL Summary:
No subsequent appellate history.
**Citing References:**
  Positive Analyses:        **Followed (1)**

## PRIOR HISTORY ( 0 citing references )

*(CITATION YOU ENTERED):*
Mitchell v. Prudential Health Care Plan, 2002 U.S. Dist. LEXIS 10567 (D. Del. June 10, 2002)

## CITING DECISIONS ( 6 citing decisions )

### 1ST CIRCUIT - U.S. DISTRICT COURTS

1. **Cited by:**
   Urso v. Prudential Ins. Co. of Am., 2004 DNH 167, 2004 U.S. Dist. LEXIS 23930, 34 Employee Benefits Cas. (BNA) 2512 (D.N.H. 2004)
      2004 U.S. Dist. LEXIS 23930

### 3RD CIRCUIT - U.S. DISTRICT COURTS

2. **Cited by:**
   Scott v. Hartford Life & Accident Ins. Co., 2004 U.S. Dist. LEXIS 8702 (E.D. Pa. May 13, 2004)
      2004 U.S. Dist. LEXIS 8702

3. **Cited by:**
   Purnell v. Unum Life Ins. Corp. of Am., 2003 U.S. Dist. LEXIS 6847 (D. Del. Apr. 17, 2003)
      2003 U.S. Dist. LEXIS 6847

4. **Cited by:**
   Sanderson v. Cont'l Cas. Corp., 279 F. Supp. 2d 466, 2003 U.S. Dist. LEXIS 2582 (D. Del. 2003)
      279 F. Supp. 2d 466 *p.474*

5. **Cited by:**
   Thorpe v. Cont'l Cas. Co., 2002 U.S. Dist. LEXIS 24405 (E.D. Pa. Dec. 18, 2002)
      2002 U.S. Dist. LEXIS 24405

Case 1:04-cv-00351-SLR-LPS   Document 29-4   Filed 06/24/2005   Page 12 of 12

Page 2

SHEPARD'S® - 2002 U.S. Dist. LEXIS 10567 - 6 Citing References

**6TH CIRCUIT - U.S. DISTRICT COURTS**

6. **Followed by:**
   *Adams v. Prudential Ins. Co. of Am.*, 280 F. Supp. 2d 731, 2003 U.S. Dist. LEXIS 15591 (N.D. Ohio 2003)
   280 F. Supp. 2d 731 *p. 736*