*Exhibit B*

Case 1:04-cv-00351-SLR-LPS    Document 33-3    Filed 03/26/2007    Page 1 of 7



Peer Review Services Division

## Peer Review Report

| | | | |
|---|---|---|---|
| Referral Date: | 5/30/2006 | Review Type: | Disability |
| Claimant's Name: | Moira C Goletz | Group/Policy/ Claim Number: | 10371073 |
| MES Case Number: | 300610831 | Service: | Standard Appeal |
| Client: | Prudential Financial | Referred By: | Michael C Dalessio |

### DATA REVIEWED AND CONTACT INFORMATION:
The Prudential Financial referral form and the submitted clinical information.

### SUMMARY OF RECORDS:
The claimant was evaluated in an independent peer review on 5/16/2006. It was felt that there are no functional impairments related to inflammatory arthritis or defined rheumatologic condition from 10/30/2002 forward. There was no rheumatologic basis upon which to support restrictions.

The claimant also was subject to a file review performed by Patrick Foy, M.D. on 12/30/2003. The problem with this report is that much of the material was not available, a situation that appears to have been rectified in the 2/10/2004 report. It was this examiner's point of view that a recurrent inflammation/synovitis would be expect to be difficult for her if she were required to perform repetitive hand activities on a frequent or continuous basis. Repetitive hand activities are felt to be possible only one third of the day.

The claimant is evaluated by Glenn Rowe, D.O., and she is felt to have bilateral carpal tunnel syndrome and surgery would be recommended. Since that time she has continued to experience complaints of numbness and pain, and an EMG performed on 8/26/1993 revealed moderate compromise in the function of the median nerve. She is reevaluated on 1/25/1995, having experienced the symptoms for 2.5 years. Again that recommendation is made for surgery, and a right carpal tunnel release under magnification is performed on 4/10/1995. On 4/20/1995 the claimant is reevaluated, with numbness in her thumb which he bumped on the hood of her car. The claimant is held off work, and a left carpal tunnel release is performed on 4/25/1995. On 5/9/1995 the claimant is reevaluated, experiencing soreness in the incision. Both hands are healing well, and she is encouraged to work on desensitization of the hands. She is reevaluated on 6/8/1995, with good flexion and range of motion in the hand and she is recommended to continue her home exercise. On 6/11/1999 Dr. Rowe reevaluates the claimant, now with complaints of numbness that has been present for about six months. She has a positive Tinel to the little finger, with evidence of nerve irritation. EMG of the left upper extremity is recommended and she is given Celebrex.

The claimant is evaluated by Dr. Rowe on 8/19/1999. The claimant states that her symptoms are essentially unchanged. She is felt to have left ulnar nerve palsy, and an injection is performed. On September 7 the claimant undergoes left anterior intramuscular ulnar nerve transposition, and she is reevaluated on 9/18/1999 and a splint is removed. She is placed in a long-arm cast, and she notes burning when reevaluated on 10/18/1999. The wound is healed at that time, and she is given medications. On 11/11/1999 the claimant reports increase soreness in the left wrist, having hurt it in therapy. X-ray of the cervical spine show anterior superior end plate spurring at C5; and she is now diagnosed as having a cervical and thoracic sprain. MRI of the left wrist is reviewed on 12/16/1999, and there are soft tissue changes on the palmar aspect of the wrist consistent with the prior surgery, and degenerative changes within the triangular fibrocartilage are noted. The claimant

is asked to continue on physical therapy. Dr. Rowe evaluates the claimant on 1/20/2000, stating that neck is better but she's having pain at the elbow. She has a good range of motion and no positive focal findings. She is asked to work at light duty. On 3/20/2000 she is reevaluated, having worked with a chiropractor at the request of the orthopedics. This is temporarily discontinued as she was having difficulty with her gallbladder. On 5/18/2000 the claimant states she is feeling worse, having worked in the garden causing her left arm to throb. The claimant is still tender from her gallbladder operation. Physical examination is non-focal. She was offered an injection into the left wrist, and this was performed. On 5/23/2000 the claimant is recommended to have an MRI of the cervical spine and repeat electrodiagnostic studies.

MRI of the cervical spine on 6/2/2000 shows mild spondylosis and degenerative disease, without evidence of disc herniation.

Electrodiagnostic studies are performed by Steve Penny M.D. on 6/20/2000, and it is noted to be a normal study. A musculoskeletal basis for the claimant's symptoms is considered.

On 7/17/2000 the claimant indicates to Dr. Rowe the therapy was not helpful. MRI of the cervical spine revealed mild spondylosis and degenerative disease, and the electrodiagnostics were noted to be normal. There is "little else to offer" to the claimant, and she is referred for pain management. On 2/14/2001 the claimant describes right elbow pain, left wrist pain, and cracking. The claimant cannot lift because of the right elbow pain and the fact that the right arm goes numb. The left wrist pain is worse at night. The claimant is felt to be tender in the lateral epicondyle, and this new diagnosis is added to the prodigious list. She is given physical therapy for this new problem. Glenn Rowe, D.O. performs right elbow anterior intramuscular ulnar nerve transposition on 5/22/2001 and a week after surgery is requesting a "lightweight". The claimant is placed in a long-arm cast, and by July 9, 2001 is indicating that she is better. Incisions are healed once the cast is removed. She is referred to a hand surgeon for possible wrist arthroscopy.

A normal three phase bone scan of the upper extremities is noted on 3/23/2001.

Eric Schwartz, M.D. (Dr. Rose partner) makes a diagnosis of a TFCC tear of the left wrist on 8/15/2001, and surgical intervention is recommended. On 9/19/2001 Dr. Rowe reevaluates her and she is given injection into the right olecranon.

Repeat electrodiagnostic studies are performed by Dr. Penny with mild persistent flowing across the elbow noted on 10/12/2001.

Eric Tamesis, M.D. evaluates the claimant at the request of his partner Glenn Rowe, DO on 2/23/2001. She has multiple joint pains, the cracking sensation of her left wrist and followed by persistent pain. The corticosteroid injections have not made any affect. Labs were ordered and when reevaluated on 3/9/2001 all the labs including rheumatoid factor, sedimentation rate, and C-reactive protein are normal. The claimant is felt to have arthritis with associated synovitis of the small joint to the hand. She is given prednisone, and reevaluated on 3/29/2001. The claimant mentions her low back pain and stiffness has improved, but she has pain involving her neck a throbbing sensation of her wrist. Examination is unremarkable, as was a bone scan that was negative for RSD. The claimant is started off her steroids and repeat labs are recommended. She is felt to have fibromyalgia when evaluated on 2/4/2002, and multiple joint complaints are noted on 3/4/2002. Once again all labs are normal with the exception of C-reactive protein. Without evidence she is felt to have an inflammatory polyarthritis and she is given prednisone once again. Surgical records for a laparoscopic cholecystectomy are noted on 2/23/2000, performed by John Glenn, M.D. On 3/7/2000 claimant is noted to be well, with pain in her incisions. She has some

epigastric pain on 3/28/2000, but physical examination is normal. On 2/19/2002 the claimant presents with an abnormal thyroid scan, and by 2/28/2002 the biopsy is noted to show nodular hyperplasia. There are no new symptoms by 8/20/2000, nor on 3/4/2003 the operative note for the biopsy is dated 6/9/2003 on 7/15/2003 a claimant is released.

CT of the abdomen on 4/28/2000 shows a normal examination of the pancreas, a mild inflammation of the mesentery, and cholecystectomy. Ultrasound on 3/29/2003 is normal. Ultrasound of the thyroid on 3/26/2003 shows a solid nodule with some cystic degeneration within the left lobe. This increased in size when compared to 1/28/2002, and biopsy is recommended.
On 5/8/2002 she is felt to have seronegative inflammatory polyarthritis and is started on methotrexate. On 7/11/2002 Dr. Tamesis states in a letter that she has an inflammatory polyarthritis that limits her ability to do any significant activities of daily living. On 6/25/2002 she is reevaluated, and all of her labs are normal. Once again the diagnosis of inflammatory polyarthritis is stated, and when reevaluated on 7/26/2002 she is noted to have significant pain. She is now felt to have seronegative rheumatoid arthritis and she is given more methotrexate.

On 10/16/2001 the claimant is unchanged, according to Dr. Rowe. The EMG is reviewed, and there is no evidence of cervical radiculopathy. MRI of the cervical spine is recommended once again. On 12/13/2001 the claimant is reevaluated. She states she has blurred vision, though her eye exam was okay. MRI shows mild degenerative disc disease at C 3-4 and at other levels. No specific recommendations are made. On 1/16/2002 the claimant is reevaluated, saying the physical therapy did not help but that the chiropractic treatment did seem to be helping. There is no new recommendation made. On 4/4/2002 claimant is reevaluated, stating she is worse, now complaining of left knee pain and more wrist pain. The claimant is felt to have a medial collateral ligament sprain and degenerative disease of the wrist, and he is referred for physical therapy. On 6/5/2002 the claimant is reevaluated once again, with an effusion in her knee. In regards to her wrist is asked continued therapy, and an injection is recommended. When reevaluated on 6/23/2002 the claimant states that her condition is unchanged. She has sharp burning pain in the left knee, and another injection is recommended and performed. The claimant is felt to be unable to work on 7/24/2002 due to difficulties in sitting, standing and walking. Examination on that day states that she continues to be unchanged, with crepitus in the knee and decreased range of motion in the neck. The claimant has some discomfort in the lumbar spine. The diagnoses are unchanged, the claimant is given a cortisone injection into the knee once again. On 12/2/2002 she is reevaluated, with tenderness over the ulnar aspect of the wrist. There is an effusion in the left knee. Repeat MRI of the wrist is recommended. Arthroscopy on the left knee is discussed, but the claimant wishes to hold off.

An appeal dated 7/29/2002 is filed by the claimant. A second appeal is dated February, 2003 and John S. Grady writes a letter on 5/23/2003 stating that he represents the claimant in regards to disability. On 9/19/2003 he states that he will be submitting an appeal letter, and on 12/2/2003 he states that he would again ask the insurer to re-examine its findings of non-disability.

Peter Bandera, M.D. evaluates the claimant 10/30/2002. He examines the claimant. He notes that she transfers for sit to stand in a normal manner, and handles her documents without problem. She sat through the examination in a calm manner. She is noted to be anxious, with trace swelling of the hands bilaterally. There is no tenderness, warmth, crepitus or swelling relative to any joints. She has some left extensor radial hand tenderness, as well as tenderness of the left extensor thumb for which she is wearing a Velcro a Spencer thumb immobilizer. Range of motion is full, though she complains of pain when making a fist. The only objective findings noted are trace swelling of the hands and left extensor tendonitis, and is said to have multiple subjective complaints which do not correlate objectively. She is felt to be able to work in at least a light duty capacity.

The claimant undergoes electromyography and nerve conduction examination by Robert Varipapa, M.D. which showed nerve conduction difficulties.

MRI of the left wrist shows soft tissue changes on the palmar aspect suggestive of prior surgery, with an intact flexor retinaculum. There is degeneration in the triangular fibrocartilage the minimal degenerative changes in the carpal bones.

MRI of the left knee on 6/14/2002 shows no evidence of meniscal tear and a very small joint effusion.

Surgical records for a laparoscopic cholecystectomy are noted on 2/23/2000, performed by John Glenn, M.D. On 3/7/2000 claimant is noted to be well, with pain in her incisions. She has some epigastric pain on 3/28/2000, but physical examination is normal. On 2/19/2002 the claimant presents with an abnormal thyroid scan, and by 2/28/2002 the biopsy is noted to show nodular hyperplasia. There are no new symptoms by 8/20/2000, nor on 3/4/2003 the operative note for the biopsy is dated 6/9/2003 on 7/15/2003 a claimant is released.

CT of the abdomen on 4/28/2000 shows a normal examination of the pancreas, a mild inflammation of the mesentery, and cholecystectomy. Ultrasound on 3/29/2003 is normal. Ultrasound of the thyroid on 3/26/2003 shows a solid nodule with some cystic degeneration within the left lobe. This increased in size when compared to 1/28/2002, and biopsy is recommended.

On 9/9/2002 she is noted to have an increase in pain all over, and the claimant stopped her prednisone as she is having GI discomfort. Weight has increased, and she is given more prednisone. On October 18, 2002 the claimant is reevaluated, continuing on the prednisone and methotrexate. On 1/8/2003 a letter is written once again stating that he has a severe disabling inflammatory arthritis. When reevaluated on 3/19/2003 there is no change in her condition and she is having significant back pain. She is continued on methotrexate, Skelaxin and Celebrex. She is unchanged on 4/11/2003 and is scheduled for Remicaid. This is noted to have improved her joint swelling on evaluation of 5/8/2003, and it is stated that the claimant requires periodic infusions every eight weeks to maintain drug level. She is evaluated on 6/26/2003, again with symptomatic cramps. She is felt to be flaring, and she is given more methotrexate and Remicaid. On 7/30/2003 she is said to be improved after her last Remicaid infusion, and she is given soma and her prednisone is taper down. On 8/27/2003, Dr. Tamesis writes a letter to the claimant's lawyer, criticizing the required medical evaluation. The claimant is said to have very weak strength, and is said to be unable to sit for long periods of time due to her chronic stiffness and inability to walk or stand for long periods of time due to chronic joint pain. The claimant is said to have chronic pain, is fatigued, and sleeping poorly.

Peter Bandera, M.D. evaluates the claimant 10/30/2002. He examines the claimant. He notes that she transfers for sit to stand in a normal manner, and handles her documents without problem. She sat through the examination in a calm manner. She is noted to be anxious, with trace swelling of the hands bilaterally. There is no tenderness, warmth, crepitus or swelling relative to any joints. She has some left extensor radial hand tenderness, as well as tenderness of the left extensor thumb for which she is wearing a Velcro a Spencer thumb immobilizer. Range of motion is full, though she complains of pain when making a fist. The only objective findings noted are trace swelling of the hands and left extensor tendonitis, and is said to have multiple subjective complaints which do not correlate objectively. She is felt to be able to work in at least a light duty capacity.

On 2/10/2003 a letter to whom it may concern indicates that the claimant has a first degree MCL sprain and degenerative joint disease of the left knee (the sprain should have been well-healed), a tear of the triangular fibrocartilage, right elbow olecranon bursitis, cervical and thoracic strain, degenerative disease of the cervical spine, and a lumbosacral strain. On 3/3/2003 the claimant is reevaluated, and she desires to undergo arthroscopy for a knee. She is also placed in a wrist splint. On 4/10/2003 the claimant is recommended to undergo surgery, and arthroscopic chondroplasty of multiple areas of the joint are performed on 4/29/2003. The operative note indicates that moderate degenerative disease was noted. Reevaluation on 5/6/2003 shows that the claimant is pleased with her surgery, and refuses formal physical therapy to do a home exercise program. On 5/28/2003 the claimant states that she is doing better. A cortisone injection and possible Synvisc is reevaluated. On 7/28/2003 the claimant has new complaints of pain after weeding in her garden, and she is started on Mobic. It is recommended that she undergo cortisone injection which she does on 8/28/2003.

A normal MRI with mild facet arthropathy is noted on 3/24/2003.

Errol Ger. M.D. evaluates the claimant on 1/7/2003 with complaints of left wrist pain. "I understand she has a diagnosis of rheumatoid arthritis". The claimant is felt to have a small ganglion on the dorsum of the wrist, and a Marcaine injection is done. Exploration of her wrist with excision of a ganglion is performed on 2/13/2003. On 4/23/2003 she is noted to be having discomfort in her wrist, though better than before. Her wounds are healed and there is no evidence of infection.

Physical therapy notes in Dover Delaware are reviewed.

REVIEW QUESTION(S):
1. **Based on the documentation reviewed, does Ms. Goletz have functional impairment(s) relating to a rheumatological condition from 10/30/2002 forward? If so, please list the functional impairment(s) as well as the evidence supporting your opinion.**

This claimant has significant subjective complaints without objective findings. She has been alternatively diagnosed as having seronegative inflammatory arthritis or fibromyalgia, both of which are nonspecific diagnoses which accept the claimant's symptoms as evidence of the disease without any objective evidence of this disease. The abnormalities in her labs are nonspecific and not lasting, and the response to treatment is not consistent with these findings. She has mild degenerative arthritis in her knee and mild degenerative arthritis of her back, neither of which explained her pain. She has degenerative changes in the TFCC, which can be found in the normal population. Her bone scan was negative, which would be expected to show evidence of and arthritic process. In short, there is no evidence of functional impairment relating to a rheumatologic or orthopedic condition from 10/30/2002 forward.

2. **Please identify appropriate restrictions and/or limitations in terms of Ms. Goletz's ability to sit, stand, walk, lift, reach, carry, etc., based on the Functional Impairment(s) you have listed above. Please also note the duration of any applicable restrictions and/or limitations (e.g. temporary or permanent) and the evidence supporting your opinion.**

The claimant has significant symptomatic complaints, without any objective evidence of disease. I cannot identify any orthopedic basis within the accompanying medical record to support any restrictions or limitations. Therefore, no restrictions and/or limitations in terms of Ms. Goletz's ability to sit, stand, walk, lift, reach, carry, etc. are required.

3. **If medical records are indicating significant impairment, please comment on expected treatment, duration and prognosis (is improvement likely?).**

The medical records do not indicate significant functional impairment.

The medical records indicate significant symptomatic complaints without objective basis for them. The claimant's vague findings on physical examination do not explain her pain. The objective testing including MRI, bone scan, and lab tests do not indicate significant abnormalities the correlate with this claimant's pain. In my opinion the medical records do not indicate a significant impairment. Her prognosis is poor based on the fact that she has had the symptomatic complaints for years without objective findings.

4. **Do the medical records support significant adverse side effects from any medication or combination of medication(s)? If so, please specify which medication(s) and for what time period, providing evidence of your opinion.**

There is no evidence in the medical records that support significant adverse side effects from any medication or combination of medication.

5. **If you opine that Ms. Goletz is not functionally impaired, please provide a detailed explanation supporting your opinion.**

This claimant has significant complaints of pain that are accepted on face value by her treating physicians. She is assigned a nonspecific diagnosis that increase her sense of impairment. Her surgical explorations have shown minimal pathology, and the objective testing shows minimal pathology. The claimant was examined by an independent physician and was not found to have significant pathology. Her laboratory values are within normal limits. There is no evidence of ongoing significant functional impairment

**CONFLICT OF INTEREST:**
*I certify that I have no relationship or affiliation with the beneficiary of this independent review or a significant past or present relationship with the Attending Provider and/or the treatment facility. I further certify that I have no familial or material professional or business relationship or incentive to promote the use of a certain product or service associated with the review of this case. I further certify that I have no direct or indirect financial incentive for a particular determination or ownership interest of greater than 5% between any affected parties.*

R. David Bauer, M.D.
Board Certified in Orthopaedic Surgery
Added Expertise in Spine Surgery
CA License #G63503
TX License #K3086
6/6/2006

**REFERENCE(S):**
Rainville, James MD ; Pransky, Glenn MD; Indahl, Aage MD, PhD; Mayer, Eric K. MD  The Physician as Disability Advisor for Claimants with Musculoskeletal Complaints. Spine. 30(22):2579-2584, November 15, 2005. Claimants' desires strongly predict disability recommendations (i.e., physicians often acquiesce to claimants' requests).