*Exhibit E*

**Prudential Financial**

Tara Johnson, ALHC
Appeals Specialist
On Behalf of Prudential's Appeals Committee

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718 Ext: 4441
Fax: (866) 285-8569
Hours: 08:00 AM 04:00 PM

August 17, 2006

John Grady
6 North Bradford Street
Dover, DE 19904

Claimant: Moira C Goletz
Control #/Br: 56249 / 00004
Claim #: 10371073
Date of Birth: 09/30/1957

Dear Mr. Grady:

We have reconvened our Appeals Committee and completed our review of your third request for reconsideration of our decision to terminate Moira Goletz's claim for Long Term Disability (LTD) benefits effective October 30, 2002 under the Group Policy #56249 issued to Bank One. Our Appeals Committee has determined that our decision was appropriate and have upheld our decision to terminate Ms. Goletz's claim for LTD benefits. This letter outlines the reasons for this determination.

In order to receive benefits under Group Policy #56249, covered employees must meet all contractual requirements including the following definition of "Disability":

"You are disabled when Prudential determines that:

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
- you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim."

AUG 28 2006

**Information about prior claim reviews**

Ms. Goletz discontinued working as a Card member Advocacy Specialist as of May 01, 2000 due to bilateral carpal tunnel surgery and cervical sprain / strain. Based on the information in her file benefits were paid through October 29, 2002 as we determined that she was disabled from performing her regular occupation as a Card member Advocacy Specialist. Specifically, our in-house physician determined that she would have the restrictions and limitations of no repetitive left hand use. When the definition of disability changed effective October 30, 2002, we evaluated Ms. Goletz's ability to perform the duties of any gainful occupation for which she is reasonably fitted by education, training or experience. We reviewed the information in her file and determined that she would be capable of performing another, gainful occupation. Please see our decision letter dated June 24, 2002 for further details.

**Information about Ms. Goletz's initial appeal**

On August 01, 2002, we received Ms. Goletz's initial appeal letter and additional medical information from her treating providers. In order to obtain a better understanding of Ms. Goletz's level of function on this appeal, we referred her for an Independent Medical Examination (IME) on October 30, 2002, with Dr. Bandera. Ms. Goletz underwent the IME, and the conclusions were that she had multiple complaints, which do not correlate objectively. Given her physical examination and review of her medical records Dr. Bandera opined that she has the ability to perform at least a light duty job. Dr. Bandera indicated that there was no need for restrictions on sitting, standing and walking activities. Dr. Bandera indicates that Ms. Goletz may be restricted to lifting and carrying five to ten pounds frequently and should defer high impact activities. He also opines that from functional perspective she may have a mildly reduced ability to manipulate small objects such as coins. Based on this review, we upheld Ms. Goletz's initial appeal as the restrictions and limitations opined by Dr. Bandera would not preclude her from performing the alternate occupations identified. Please see our decision letter dated November 21, 2002 for further details.

**Information about Ms. Goletz's second appeal**

On February 28, 2003 we received Ms. Goletz's second appeal letter. In her letter, she indicated that she remained unable to return to work due to elbow, wrist, and knee pain. In addition to her appeal letter narratives from Dr. Tamesis, rheumatologist, Dr. Rowe, orthopedist, and an appointment slip for surgery with Dr. Ger, orthopedist, were submitted. As the additional information provided did not apply to Ms. Goletz's medical condition as of October 30, 2002 (the date benefits terminated), we elected to send a copy of Dr. Bandera's IME report to each of her treating physicians for comment.

In a telephone conversation on March 27, 2003 Dr. Ger advised that he only treated Ms. Goletz for her wrist and her last office visit was on February 24, 2003. Dr. Ger advised that he would not be providing comments regarding the IME report that was forwarded to his office.

On May 9, 2003 we received a narrative dated May 8, 2003 from Dr. Tamesis. The narrative included the same information contained in his letter from January 8, 2003 and did not provide any comments regarding the IME report that was forwarded to his office.

On May 9, 2003 we also received a narrative dated May 8, 2003 from Dr. Rowe. The narrative indicated that Ms. Goletz underwent arthroscopic surgery of her left knee on April 29, 2003. He also notes her other orthopedic complaints. Dr. Rowe notes that her last office visit was on May 6, 2003, at which time she was advised to continue weight bearing with her walker and to continue her home exercises. Dr. Rowe opined that Ms. Goletz was unable to work at this time.

After reviewing all information in the claim on second appeal, we determined that the new information provided did not support Ms. Goletz's inability to perform the duties of the alternate, gainful occupations identified for her as of October 30, 2002. Therefore, we again upheld our decision to terminate her claim. Please see our decision letter dated May 12, 2003 for further details.

**Information about your third appeal on behalf of Ms. Goletz**

On December 04, 2003, we received your letter of third appeal on behalf of Ms. Goletz. Along with your appeal, you submitted medical documentation dated from 1995-2003. As part of our evaluation, we arranged an external review of the medical documentation contained in Ms. Goletz's claim file with Patrick Foye, MD, who specializes in physical medicine and rehabilitation. Based on Dr. Foye's review of the medical records, he notes that Ms. Goletz does appear to have some inflammatory polyarthritis, however, rheumatoid arthritis testing was negative. Dr. Foye notes that Ms. Goletz' recurrent inflammation/synovitis would be expected to create difficulty for her if she was required to perform repetitive hand activities on a frequent or continuous basis. However, Dr. Foye notes that she would most likely be capable of performing an occupation with only occasional repetitive hand activities. Dr. Foye also notes that Ms. Goletz may have difficulty with repetitive overhead activities due to chronic neck and shoulder pain. Dr. Foye opines that with these limitations and restrictions Ms. Goletz would be expected to be able to work in a full time capacity. As gainful occupations had previously been identified within these limitations and restrictions, we upheld our previous claim decision to terminate LTD benefits effective October 30, 2002.

In your request for third reconsideration, you also provided a Social Security Disability Benefit award letter. We advised you in our decision letter that Prudential determines eligibility for LTD benefits based on the terms of the Group Policy, separate from the criteria used by the Social Security Administration in determining eligibility of Social Security Disability Benefits. Prudential must evaluate claims based on terms of the Group Policy independent of the Social Security Administration. Please see our decision letter of March 15, 2004 for more details.

**Information about the claim Remand**

This claim was litigated and remanded to Prudential for further development of medical and vocational issues. In sum, the Court found that "there were factual issues regarding the extent of plaintiff's conditions due to her treating physicians' reports, plaintiff's ability to perform in any occupation due to the lack of vocational evidence on this issue and the impact of the Social Security Administration's favorable determination for plaintiff".

The memorandum opinion noted that our determination letters did not discuss the opinions of Ms. Goletz's treating physicians, or that of the SSA, and indicates that these reports were entitled to a thorough and fully supported discussion of why they were rejected (i.e. why we reached a different conclusion). The Court noted we did not follow the recommendations of Dr. Foye - in a claim discussion with Dr. Foye, an IME with an orthopedic, rheumatologist or rehabilitation physician was recommended; and later, in his file review, Dr. Foye recommended a vocational assessment. The Court also noted that the specialty of the IME physician (physiatrist) was not the same as Ms. Goletz' treating physicians (orthopedic or rheumatology).

Prudential is charged with determining if Ms. Goletz meets the definition of disability as of October 30, 2002 in order for additional benefits to be payable under this plan. While requesting that Ms. Goletz attend an IME would provide us with an assessment of her current abilities, an IME now, 3.5 years later, would not speak to her overall abilities at the end of 2002, the period of time we are evaluating her eligibility for benefits. As such, in order to address the Court's concerns, we arranged for an outside medical review of all of the records in file, including the SS

award letter and the reports of Ms. Goletz's treating physicians, with a physician specializing in orthopedics and rheumatology, as these are the specialties of Ms. Goletz's physicians. Additionally, we referred Ms. Goletz's file for review by an external Vocational specialist.

The reviews done on Remand are as follows:

**Orthopedic Review**

The Reviewer notes that Ms. Goletz has significant subjective complaints without objective findings. She has been alternatively diagnosed as having seronegative inflammatory arthritis or fibromyalgia, both of which are non-specific diagnoses which accept her symptoms as evidence of the disease without any objective evidence of disease. The abnormalities in her labs are nonspecific and not lasting, and the response to treatment is not consistent with these findings. She has mild degenerative arthritis in her knee and mild degenerative arthritis of her back, neither of which explained her pain. She has degenerative changes in the TFCC, which can be found in the normal population. Her bone scan was negative, which would be expected to show evidence of an arthritic process. In short, there is no evidence of functional impairment relating to a rheumatologic or orthopedic condition from October 30, 2002 forward.

The Reviewer notes that Ms. Goletz has significant symptomatic complaints, without any objective evidence of disease. He can not identify any orthopedic basis within the medical records to support any restrictions or limitations. Therefore, he opines that no restrictions and/or limitations in terms of Ms. Goletz's ability to sit, stand, walk, lift, reach, carry, etc. are required.

The medical records indicate significant symptomatic complaints without objective basis. The vague findings on examination do not explain her pain. The objective testing including MRI, bone scan, and lab tests do not indicate significant abnormalities that would correlate with her reported pain. It is the Reviewer's opinion that the medical records do not indicate a significant impairment. She is assigned a nonspecific diagnosis that increases her sense of impairment. Her surgical explorations have demonstrated limited pathology, and the objective testing demonstrates minimal pathology. Ms. Goletz was examined by an Independent Physician and was not found to have significant pathology. Her lab values are within normal limits. There is no evidence of significant functional impairment.

**Rheumatology Review**

The Reviewer opines that based on the documentation reviewed, Ms. Goletz does not have functional impairments related to inflammatory arthritis or a defined rheumatologic condition from October 30, 2002 forward. There is no identified rheumatologic basis within the medical record to support restrictions or limitations based upon an underlying inflammatory condition or rheumatological condition.

The medical records identify the development of hives following treatment with sulfasalazine, but otherwise, there is no evidence identified in the medical record to indicate adverse side effects including cognitive deficit from any medication or combination of medications.

It is noted by the Reviewer that in review of Dr. Temesis' records, there are findings of synovitis on only one occasion, specifically, the office visit of March 09, 2001 in which he mentions that his examination of small joints to the hands now reveal evidence of synovitis. The Reviewer opines that synovitis is an interpretation and not a physical finding. However, it is fair to interpret his report as indicating synovial thickening. His following notes of March 29, 2001 indicates that his exam of the musculoskeletal system still reveals no synovitis of effusions of the hands or wrists.

This comment suggests that he has not identified synovitis or effusions in the past and contradicts his statement in the prior note. After reviewing all of the records from his office there was no further mention of soft tissue swelling or synovial thickening. Furthermore, testing for rheumatoid factor was consistently negative, as was ANA. The Reviewer does not identify any test for anti-CCP, a newer test for rheumatoid arthritis that is less sensitive but somewhat more specific and reported to be present in up to 40 percent of patients with seronegative rheumatoid arthritis.

The Reviewer also notes that the report of the bone scan of the upper extremities was normal. Although this study was done in an attempt to address the possibility of reflex sympathetic dystrophy, the study would typically indicate increased uptake in small joints in rheumatoid arthritis if that condition were present and active. The fact the study demonstrated no such abnormality weighs against the presence of active inflammation of the small joints of the hands as well as other joints of the upper extremities that were included in the study. In addition, Dr. Ger undertook surgical removal of a ganglion cyst of the left wrist in February of 2003. His operative report describes the operative findings and fails to identify any evidence of inflammation of the wrist or evidence of synovitis. The description is typical of a common ganglion cyst.

Also, an MRI of the left wrist dated December 17, 2002 demonstrated the ganglion cyst but identified no evidence of synovitis or joint effusion, again weighing against the presence of an underlying inflammatory process. The notes from Dr. Temesis do not provide a clinical basis for identifying a significant response to immunosuppresive therapy. There were findings of a transient increase of sedimentation rate and C-reactive protein on one occasion. These are non-specific and the fact that they were elevated on only one occasion while being in the normal range for most of the duration of her symptoms suggests that the transient elevation does not represent underlying inflammation in Ms. Goletz's joints. In the Reviewer's conclusion, the medical records fail to identify a medical basis of an underlying arthritis or any resulting impairments or restrictions due to such an arthritis.

**Vocational Review**

We referred Ms. Goletz's file to an external Vocational Rehabilitation Consultant (VRC) for review of her employability. While the most recent medical reviews of her file revealed that there was no support for restrictions or limitations, we requested a vocational review allowing for the restrictions previously identified of no repetitive use of the left upper extremity, no lifting or carrying over 10 lbs frequently, mildly reduced fine manipulation, and no high impact activities.

Utilizing the above restrictions, the VRC identified the following alternate, gainful occupations that Ms. Goletz would be capable of performing:

| Occupation | Expected Earnings |
| --- | --- |
| Secretary | $12.16-$15.28/hr |
| School Secretary | $12.16-$14.54/hr |
| Statement Clerk | $10.52-$12.59/hr |
| Insurance Clerk | $12.33-$14.74/hr |
| Receptionist | $9.82-$12.04/hr |
| Order Clerk | $12.32-$15.10/hr |
| Credit Card Clerk | $8.82-$10.98/hr |
| Invoice Clerk | $12.33-$14.74/hr |

All of the above occupations would allow for the above noted restrictions and/or limitations, would be considered gainful to Ms. Goletz, and are suitable for her based on her educational and employment history. Again, the most recent medical reviews by specialists do not indicate the need for any restrictions or limitations, but in an effort to waive doubt in her favor, we have

reviewed the vocational aspects of her claim with the previously identified restrictions and limitations in place.

In summary, we have determined upon review of Ms. Goletz's file that her medical conditions did not impair her from performing the material and substantial duties of any gainful occupation as of October 30, 2006. We have identified multiple alternate occupations that she would be capable of performing in two separate vocational reviews of her claim. Numerous medical reviews of her claim by internal and external physicians have opined that she is not significantly functionally impaired as of October 30, 2002. As such, our Appeals Committee has concluded that it is appropriate to uphold our previous decisions to terminate this claim as of October 30, 2002, and no further benefits are payable.

If you have any questions, please contact me at (800) 842-1718, extension 4441.

Sincerely,

*Tara Johnson, ALHC*

Tara Johnson, ALHC
Appeals Specialist
On Behalf of Prudential's Appeals Committee