IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MOIRA GOLETZ, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 04-351 |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | : | |
| Defendant. | : | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT**

Defendant The Prudential Insurance Company of America ("Prudential"), by and through its counsel, hereby responds to plaintiff's motion for summary judgment and in support thereof and in furtherance of its cross motion for summary judgment, avers as follows:

1. Denied as stated. It is admitted only that plaintiff filed suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq. as a result of Prudential's termination of her long term disability ("LTD") benefits.

2-3. Admitted.

4. Denied as stated. The court remanded the case to Prudential, as claims administrator, for consideration of additional evidence and requested that it (1) discuss more fully why the conclusions of plaintiff's treating physicians were rejected; (Op. at p.24, 26-27 D.I. 31) (2) complete a vocational review of the plaintiff's ability to perform in any occupation; (Op. at p. 24-25, 27) and (3) provide an explanation of why the plaintiff's favorable Social Security Disability Benefits award was not considered more fully. (Op. at p. 26)

245610.1

5.   Denied as stated. Prudential's attorney sent a letter to plaintiff's attorney informing them that Prudential had reviewed the Court's opinion and had elected to reconsider Ms. Goletz' case in light of the court's directives. Further, the letter stated that nothing additional was needed from plaintiff *at that time* and that should a need arise for supplemental materials, Prudential would contact plaintiff's counsel directly. (See, Exhibit "A," letter dated April 26, 2005 from Jonathan Dryer, Esquire to John Grady, Esquire attached to this motion.)

6-7.   Admitted.

8.   Denied as stated. On or about August 17, 2006, Prudential reconvened the Appeals Committee to complete a review of plaintiff's third request for reconsideration of Prudential's decision to terminate plaintiff's LTD benefits pursuant to the court's order dated March 29, 2006. The court determined that Prudential needed to consider additional evidence before rendering its final decision. (See, Op. at p. 26-27; Exhibit E to the Plaintiff's Motion for Summary Judgment ["Plaintiff's Motion] D.I. 33).

9.   Denied as stated. Pursuant to and in compliance with the court's opinion, Prudential obtained two independent medical file reviews (one doctor is an orthopedist and another, a rheumatologist) of the plaintiff's medical records. Because Prudential was evaluating plaintiff's eligibility for benefits as of October 30, 2002, an independent medical examination of plaintiff would not have been helpful as it would only reflect plaintiff's current condition. Thus, Prudential arranged for a file review of all of plaintiff's medical records in the file as well as the Social Security award letter. (See, Exhibit E to the Plaintiff's Motion) These reviews are not the basis of Prudential's decision to uphold its decision but rather they provide the court with an explanation of why the plaintiff's treating physician's conclusions were unreliable.

245610.1

10. Admitted. By way of further answer, the court's remand did not open the claim to another full appeals process. Instead, the court's opinion charged Prudential to provide a more detailed explanation of its decision, whatever that turned out to be. (See, Op. at p. 26-27).

11. Admitted.

12. Admitted. By way of further answer, the court's remand did not open the claim to another appeals process. Instead, the court's opinion charged Prudential to provide a more detailed explanation of its decision, whatever that turned out to be. (See, Op. at 26-27).

13. Admitted.

14. Denied. It is specifically denied that Prudential failed to explain why the treating physician's opinions were rejected or that it relied solely upon the additional peer reviews. By way of further response, Prudential's August 17, 2006 letter includes an in-depth review and analysis of the plaintiff's entire medical file and discusses thoroughly the records and opinions of the treating physicians. Dr. Bauer, an Orthopedic surgeon, states, "[t]his claimant has significant complaints of pain that are accepted on face value by her treating physicians. She is assigned a specific diagnosis that increase [sic] her sense of impairment. Her surgical explorations have shown minimal pathology and the objective testing shows minimal pathology...There is no evidence of ongoing significant functional impairment." He also states that the abnormalities of plaintiff's laboratory results are nonspecific and not lasting, and the response to treatment is not consistent with these findings. Plaintiff has mild degenerative arthritis in her knee and back which does not explain her pain. Her degenerative changes in the TFCC can be found in the normal population and her bone scan was negative which, if plaintiff was suffering from arthritis, would be expected to show evidence of an arthritic process. (See, Exhibit B to the Plaintiff's Motion, p. 6) In addition, Dr. Karr, a rheumatologist also completed an in depth review and

analysis of plaintiff's medical records. Dr. Karr concludes that plaintiff's rheumatologist, Dr. Tamesis found evidence of synovitis on only one occasion. Dr. Karr notes that after reviewing all of Dr. Tamesis' office notes, there was no further mention of synovitis or synovial thickening in the physical examinations. "Indeed, the overwhelming majority of exam findings throughout these notes do not mention soft-tissue swelling or synovial thickening. Furthermore, testing for rheumatoid factor was consistently negative as was ANA....Furthermore, the report of the bone scan of the upper extremities was reported as normal. Although this study was done in an attempt to address the possibility of reflex sympathetic dystrophy, the study would typically indicate increased uptake in small joints in rheumatoid arthritis *if that condition were present and active*." [emphasis added] Dr. Karr also notes that the MRI of the left wrist dated 12/17/02 identified no evidence of synovitis or joint effusion, which weighed heavily against the presence of an underlying inflammatory arthritis. "*The notes from Dr. Tamesis do not provide a clinical basis for identifying a significant response to immunosuppressive therapy.*" He concludes by finding that the medical records fail to identify a medical basis for underlying arthritis or any resulting impairment or restrictions. (See, Exhibit "B" to Plaintiff's Motion).

15-16. Denied as stated. Plaintiff Goletz contends that Prudential failed to accord proper consideration to the Social Security Administration's award of disability benefits to plaintiff. However, "the findings of [an] administrative law judge have no bearing on [a] court's determination whether the decision to deny benefits was arbitrary and capricious." Russell v. Paul Revere Life Ins. Co., 148 F. Supp. 2d 392, 409 (D.Del. 2001), aff'd by, Russell v. Paul Revere Life Ins. Co., 288 F.3d 78 (3d Cir. 2002). Also, it is well settled that a Social Security

award is not binding on a claim administrator.[1]  <u>Dorsey v. Provident Life and Accident Ins. Co</u>, 167 F. Supp. 2d 846, 856, n.11 (E.D. Pa. 2001).  "A plan administrator's decision on ERISA disability that differs from that of the SSA [Social Security Award] is not arbitrary and capricious provided it is reasonable and supported by substantial evidence."  <u>Russell</u>, 148 F. Supp. 2d at 409.  Therefore, any argument by Goletz that Prudential or the district court should have given her social security award more weight fails.  <u>William Havens v. Continental Casualty Co.</u>, 2005 U.S. Dist. LEXIS 10979 *13 and *14 (E.D. Pa. June 6, 2005).

    17.    Admitted.

    18.    Denied as stated.  It is admitted only that Prudential stated that they sent the social security award letter to the peer review doctors who did not discuss the award.  By way of further response, the administrative law judge reviewed the same medical records that Drs. Bauer and Karr did and there was no further need to discuss the administrative judge's findings.

    19.    Denied as stated.  The court's opinion states that there are factual issues regarding "the impact of the Social Security Administration's favorable determination for plaintiff" and that Prudential should reconsider the social security award.  (<u>See</u>, Op. at p. 27)  However, as the Social Security Administration ("SSA") has different criteria in awarding benefits than the ERISA plan at issue, the award offers little comparative value in this case.  By way of further response, in the list of the medical records viewed by the social security administrative judge, it is clear that the record viewed by the SSA and Prudential are quite different.  (<u>See</u>, Plaintiff's

---

[1] Unlike ERISA regulations, the Social Security Act has a "treating physician rule."  This requires administrative law judges to give controlling weight to the findings and opinions of a treating physician.  <u>Steel v. The Boeing Co.</u>, 399 F. Supp. 2d 628 (E.D. Pa. 2005).  Thus, a social security award for disability benefits cannot be binding upon the administrator of the plan when, under ERISA, a plan administrator is not required to adopt a "treating physician rule."

5

245610.1

Appendix 33[2]) The SSA did not have the benefit of any opposing doctor's reviews. As stated earlier, the Social Security Act has a "treating physician rule." This requires administrative law judges to give controlling weight to the findings and opinions of a treating physician. Steel v. The Boeing Co., 399 F. Supp. 2d 628 (E.D. Pa. 2005). Thus, the administrative law judge did not award social security disability benefits based on the same evidence and thus the award cannot be binding upon the administrator of the plan when, under ERISA, a plan administrator is not required to adopt a "treating physician rule."

20.    Admitted. By way of further response, see answer above.

21.    Denied as stated. The SSA's determination regarding the credibility of plaintiff is not a criteria in determining whether a claims administrator's decision was arbitrary or capricious. The purpose of arbitrary and capricious review is to determine the reasonableness of the determination at the time it was made, and the reviewing court may only consider evidence that was contained in the record at that time. Mitchell v. Eastman Kodak Co., 113 F.3d 433, 438-39 (3d Cir. 1997). By way of further response, the testimony of the vocational expert used in the SSA case is not a part of the administrative record that was reviewed by Prudential in making its determination. As it was not provided by the plaintiff and was not a part of the record, it has no bearing on the present case.

22.    Denied as stated. The peer reviews by Drs. Bauer and Karr reflected an in depth analysis of the plaintiffs' treating physician's records and opinions. By way of further response, Dr. Bauer, an Orthopedic surgeon, states, "[t]his claimant has significant complaints of pain that are accepted on face value by her treating physicians. She is assigned a specific diagnosis that

---

[2] The administrative record prior to the remand is referenced in Plaintiff's Appendix to her first Motion for Summary Judgment and is incorporated herein at length by reference. Prudential is not annexing a copy of the voluminous record to avoid burdening the court. However, Prudential will provide a copy if requested.

increase [sic] her sense of impairment. Her surgical explorations have shown minimal pathology and the objective testing shows minimal pathology…There is no evidence of ongoing significant functional impairment." He also states that the abnormalities of plaintiff's laboratory results are nonspecific and not lasting, and the response to treatment is not consistent with these findings. Plaintiff has mild degenerative arthritis in her knee and back which does not explain her pain. Her degenerative changes in the TFCC can be found in the normal population and her bone scan was negative which, if plaintiff was suffering from arthritis, would be expected to show evidence of an arthritic process. (See, Exhibit B to the Plaintiff's Motion, p. 6) In addition, Dr. Karr, a rheumatologist also completed an in depth review and analysis of plaintiff's medical records. Dr. Karr concludes that plaintiff's rheumatologist, Dr. Tamesis found evidence of synovitis on only one occasion. Dr. Karr notes that after reviewing all of Dr. Tamesis' office notes, there was no further mention of synovitis or synovial thickening in the physical examinations. "Indeed, the overwhelming majority of exam findings throughout these notes do not mention soft-tissue swelling or synovial thickening. Furthermore, testing for rheumatoid factor was consistently negative as was ANA….Furthermore, the report of the bone scan of the upper extremities was reported as normal. Although this study was done in an attempt to address the possibility of reflex sympathetic dystrophy, the study would typically indicate increased uptake in small joints in rheumatoid arthritis *if that condition were present and active*." [emphasis added] Dr. Karr also notes that the MRI of the left wrist dated 12/17/02 identified no evidence of synovitis or joint effusion, which weighed heavily against the presence of an underlying inflammatory arthritis. "***The notes from Dr. Tamesis do not provide a clinical basis for identifying a significant response to immunosuppressive therapy.***" He concludes by finding that the medical

7

records fails to identify a medical basis for underlying arthritis or any resulting impairment or restrictions. (See, Exhibit "B" to Plaintiff's Motion).

23.  Admitted. By way of further response, the court's remand did not open the claim to another appeals process. Instead, the court's opinion charged Prudential to provide a clearer explanation of its decision, whatever that decision turned out to be. (See, Op. at 26-27).

24.  This paragraph is not an allegation to which a response is required. By way of further response, as the claim involves the question of whether plaintiff was disabled as of October 30, 2002, a personal independent medical evaluation three and a half years later would not have been applicable or pertinent. Thus, Prudential obtained medical file reviews by doctors specializing in orthopedics and rheumatology to thoroughly review all the medical records of the plaintiff, and in particular, her treating physicians.

25.  Denied as stated. The vocational review dated July 31, 2006 was not requested based on the two recent medical reviews by Drs. Bauer and Karr. As Drs. Bauer and Karr opine that there are no restrictions and limitations, a vocational review was not necessary. Pursuant to the court's remand, Prudential arranged for a vocational review in order to determine plaintiff's ability to perform in any occupation. The reviewer noted plaintiff's restriction as follows: at least light-duty capacity, no restrictions to length of sitting, no restrictions to standing or walking, ability to lift 5-10 pounds frequently and no high impact activities or fine manipulation. These restrictions and limitations were recommended by Dr. Bandera at his IME of the plaintiff and are far in excess of the restrictions and limitations identified by Drs. Bauer and Karr.

26.  Denied. It is specifically denied that this quote from the court's opinion is applicable due to the actions taken in the remand review.

27. Denied. It is specifically denied that the August 17, 2006 denial letter is almost identical to the previous denial letters. The August 17, 2006 letter summarized the first three appeals and thoroughly analyzed the orthopedic, rheumatologic, and vocational reviews performed pursuant to the remand.

28. Denied. Prudential clearly outlines the findings of the orthopedic, rheumatologic, and vocational reviews which show why the plaintiff's treating physician's opinions are being rejected. The reviews by Drs. Bauer and Karr reflected an in depth analysis of the plaintiffs' treating physician's records and opinions. By way of further response, Dr. Bauer, an Orthopedic surgeon, states, "[t]his claimant has significant complaints of pain that are accepted on face value by her treating physicians. She is assigned a specific diagnosis that increase [sic] her sense of impairment. Her surgical explorations have shown minimal pathology and the objective testing shows minimal pathology…There is no evidence of ongoing significant functional impairment." He also states that the abnormalities of plaintiff's laboratory results are nonspecific and not lasting, and the response to treatment is not consistent with these findings. Plaintiff has mild degenerative arthritis in her knee and back which does not explain her pain. Her degenerative changes in the TFCC can be found in the normal population and her bone scan was negative which, if plaintiff was suffering from arthritis, would be expected to show evidence of an arthritic process. (See, Exhibit B to the Plaintiff's Motion, p. 6) In addition, Dr. Karr, a rheumatologist also completed an in depth review and analysis of plaintiff's medical records. Dr. Karr concludes that plaintiff's rheumatologist, Dr. Tamesis found evidence of synovitis on only one occasion. Dr. Karr notes that after reviewing all of Dr. Tamesis' office notes, there was no further mention of synovitis or synovial thickening in the physical examinations. "Indeed, the overwhelming majority of exam findings throughout these notes do not mention soft-tissue

swelling or synovial thickening. Furthermore, testing for rheumatoid factor was consistently negative as was ANA....Furthermore, the report of the bone scan of the upper extremities was reported as normal. Although this study was done in an attempt to address the possibility of reflex sympathetic dystrophy, the study would typically indicate increased uptake in small joints in rheumatoid arthritis *if that condition were present and active*." [emphasis added]   Dr. Karr also notes that the MRI of the left wrist dated 12/17/02 identified no evidence of synovitis or joint effusion, which weighed heavily against the presence of an underlying inflammatory arthritis. "*The notes from Dr. Tamesis do not provide a clinical basis for identifying a significant response to immunosuppressive therapy.*" He concludes by finding that the medical records fail to identify a medical basis for underlying arthritis or any resulting impairment or restrictions. (See, Exhibit B to Plaintiff's Motion).

      29.    Denied as stated. In obtaining the additional peer reviews, Prudential requested the doctors to determine whether plaintiff's medical records indicated a significant impairment. The ensuing findings by Drs. Bauer and Karr exhaustively list why plaintiff's treating physicians' opinions are being rejected. Specifically, the objective test results as well as the results of the physical examination all indicate that there is no underlying arthritis or any resulting impairment or restrictions. As the court has held that Prudential's previous decisions did not clearly indicate why it disagreed plaintiff's treating physicians, the August 17, 2006 letter clearly sets forth the reasons why Prudential rejects plaintiff's treating physicians' findings.

      30.    Denied as stated. Prudential obtained an independent medical examination of the plaintiff from Dr. Bandera. He indicated that plaintiff was capable of light capacity work with some restrictions and limitations. Prudential also obtained three independent file reviews. These file reviews as well as the independent medical examination are all identical in one aspect and

that is that Goletz is not disabled under the policy and that she could return to at least a sedentary duty job. On the other hand, plaintiff had the opinions of two physicians who indicate that she is disabled but offer no objective evidence in support of their opinions and conclusions.

31.   Denied as stated. Taking all of the doctors' opinions together, Drs. Bauer and Karr could identify no restrictions and limitations for the plaintiff, Dr. Bandera identifies certain restrictions and limitations but opines that plaintiff could work light duty, Dr. Foye identifies similar restrictions and limitations (with the addition of less repetitive hand activities) but agrees that plaintiff could work in a sedentary occupation, and Drs. Rowe and Tamesis indicate that plaintiff cannot work but neither gives a complete functional capacity evaluation. (See, Plaintiff's Appendix at 41 and 42).

32.   Denied. Prudential clearly outlines the findings of the orthopedic, rheumatologic, and vocational reviews which show why the plaintiff's treating physician's opinions are being rejected. The reviews by Drs. Bauer and Karr reflected an in depth analysis of the plaintiffs' treating physician's records and opinions. By way of further response, Dr. Bauer, an Orthopedic surgeon, states, "[t]his claimant has significant complaints of pain that are accepted on face value by her treating physicians. She is assigned a specific diagnosis that increase [sic] her sense of impairment. Her surgical explorations have shown minimal pathology and the objective testing shows minimal pathology…There is no evidence of ongoing significant functional impairment." He also states that the abnormalities of plaintiff's laboratory results are nonspecific and not lasting, and the response to treatment is not consistent with these findings. Plaintiff has mild degenerative arthritis in her knee and back which does not explain her pain. Her degenerative changes in the TFCC can be found in the normal population and her bone scan was negative which, if plaintiff was suffering from arthritis, would be expected to show evidence of an

arthritic process. (See, Exhibit B to the Plaintiff's Motion, p. 6) In addition, Dr. Karr, a rheumatologist also completed an in depth review and analysis of plaintiff's medical records. Dr. Karr concludes that plaintiff's rheumatologist, Dr. Tamesis found evidence of synovitis on only one occasion. Dr. Karr notes that after reviewing all of Dr. Tamesis' office notes, there was no further mention of synovitis or synovial thickening in the physical examinations. "Indeed, the overwhelming majority of exam findings throughout these notes do not mention soft-tissue swelling or synovial thickening. Furthermore, testing for rheumatoid factor was consistently negative as was ANA....Furthermore, the report of the bone scan of the upper extremities was reported as normal. Although this study was done in an attempt to address the possibility of reflex sympathetic dystrophy, the study would typically indicate increased uptake in small joints in rheumatoid arthritis *if that condition were present and active*." [emphasis added] Dr. Karr also notes that the MRI of the left wrist dated 12/17/02 identified no evidence of synovitis or joint effusion, which weighed heavily against the presence of an underlying inflammatory arthritis. "*The notes from Dr. Tamesis do not provide a clinical basis for identifying a significant response to immunosuppressive therapy.*" He concludes by finding that the medical records fail to identify a medical basis for underlying arthritis or any resulting impairment or restrictions. (See, Exhibit B to Plaintiff's Motion).

33. Admitted in part, denied in part. It is admitted that Drs. Bauer and Karr never contacted plaintiff's physicians or examined Goletz. By way of further answer, the court's remand did not open the claim to another appeals process. Instead, the court's opinion charged Prudential to provide a more detailed explanation of its decision, whatever that decision turned out to be. (See, Op. at p. 26-27) A physical examination of the plaintiff during the remand process would have had no bearing on whether she was disabled as of October 30, 2002, the

245610.1

issue before this court. Thus, Prudential elected to have two doctors of the same practice areas as plaintiff's treating physicians review their office visit notes, reports, and test results as well as all the other medical documents in the claim file. It is specifically denied that Prudential did not explain why it rejected the plaintiff's treating physicians. By way of further response, The United States Supreme Court in Black & Decker Disability Plan v. Kenneth L. Nord, 538 U.S. 822; 123 S. Ct. 1965 (2003), held that disability claims (Plan) administrators are not obliged to accord special deference to the opinions of treating physicians in ERISA matters, stating that "plan administrators...may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But...courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." Id. at 833-834. See also, Sweeney v. Standard Ins. Co., 276 F. Supp. 2d 388, 396 (E.D. Pa. 2003) (reliance on the review of non-treating physicians is not a procedural anomaly that demands a heightened level of scrutiny); Schlegel v. Life Ins. Co. of N. Am., 269 F.Supp.2d 612, 627 (E.D. Pa. 2003) (the plan administrators' reliance on its own non-treating physician over the opinions of the insured's treating physicians did not render its decision to deny benefits arbitrary and capricious because in relying on its own non-treating physicians, the plan administrator violated no policy provision, nor did it render a decision that was arbitrary and capricious on this basis). This is because courts have found that the opinions of a treating physician may also exhibit bias and conflict of interest. Stratton, 363 F.3d at 258.

    34.    Admitted.

35. As Prudential both administers and funds the policy, the proper standard of review is a sliding scale of heightened scrutiny of the arbitrary and capricious standard as set forth in McLeod v. Hartford Life and Accident Insurance Co., 372 F.3d 618, 623 (3d Cir. 2004).

36. In its memorandum opinion dated March 29, 2006, the court applied a less deferential standard to Prudential's decision finding that Prudential gave more weight to evidence that favored the refusal of benefits while giving plaintiff's treating physicians' reports little to no consideration. (Op. at p. 22) Given the detailed review and analysis of those reports in the August 17, 2006 letter, Prudential respectfully suggests that it be afforded a greater level of deference for review of its decision after the remand. (See, Exhibit E to the Plaintiff's Motion).

37. As acknowledged by the court in its memorandum opinion, it is well settled that a court may not substitute its own judgment for that of plan administrators under either the deferential or heightened arbitrary and capricious standard. Stratton v. E.I. DuPont de Nemours & Co., 363 F.3d 250, 256 (3d Cir. 2004), citing, Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc., 298 F.3d 191, 199 (3d Cir. 2002) (See, Op. at p. 26-27) Even under the heightened standard, "a plan administrator's decision will be overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan." Stratton, supra., 363 F.3d at 256, quoting, Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagon of Am., Inc., 222 F.3d 123, 129 (3d Cir. 2000). (See, Op. at p. 26-27).

38. Prudential's August 17, 2006 letter upholding its decision to terminate plaintiff's LTD benefits substantially complies with the court's direction as expressed in its March 29, 2006

Memorandum Opinion. As such, Prudential's decision to terminate Goletz' LTD benefits is supported by substantial evidence and is neither arbitrary nor capricious.

WHEREFORE, defendant The Prudential Insurance Company of America respectfully requests that this Court deny plaintiff's motion for summary judgment and grant summary judgment in its favor and against the plaintiff Moira Goletz.

                                    Respectfully Submitted,

                                    BIFFERATO GENTILOTTI LLC

BY:   /s/ James E. Drnec
        James E. Drnec, Esquire
        800 N. King Street
        Wilmington, DE 19801

        Attorneys for Defendant
        The Prudential Insurance Company
        of America

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Jonathan Dryer, Esquire
The Curtis Center, Suite 1130E
Independence Sq. West
Philadelphia, PA 19106
215-627-6900

Dated: April 27, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MOIRA GOLETZ,

        Plaintiff,

   v.                              Civil Action No.: 04-351

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

        Defendant.

## ORDER

AND NOW, this    day of         , 2007, upon consideration of Plaintiff's Motion for Summary Judgment and Defendant's response and cross motion for summary judgment thereto, it is hereby **ORDERED** and **DECREED** that plaintiff's motion is **DENIED**, and defendant's cross motion is **GRANTED.** Plaintiff's action is dismissed with prejudice.

BY THE COURT:

_____
J.

245610.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MOIRA GOLETZ, | : |
|       Plaintiff, | : |
|       v. | :   Civil Action No.: 04-351 |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | : |
|       Defendant. | : |

### CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of April, 2007, two copies of DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT were served via first class mail, postage prepaid to:

GRADY & HAMPTON, L.L.C.
Laura F. Browning, Esq.
John S. Grady, Esq.
6 North Bradford Street
Dover, DE 19904

                                            BIFFERATO GENTILOTTI, LLC

                                            James E. Drnec, Esq. (#3789)
                                            800 N. King Street; Plaza Level
                                            Wilmington, DE 19801
                                            Tel: (302) 429-1900

                                            *Counsel to Defendant*