IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MOIRA GOLETZ, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No.: 04-351 |
| | : | |
| THE PRUDENTIAL INSURANCE | : | |
| COMPANY OF AMERICA, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant The Prudential Insurance Company of America ("Prudential") submits this memorandum of law in support of its response to plaintiff's motion for summary judgment and cross motion for summary judgment.

**I.   PROCEDURAL HISTORY**

On March 29, 2006, this Court rendered a Memorandum Opinion and Order upon cross motions for summary judgment by the parties. The Court found that there were some factors in this case that rendered Prudential's decision to terminate plaintiff's LTD benefits arbitrary and capricious. (Op. at p. 21, D.I. 31) The Court then remanded the matter back to Prudential as claims administrator, to discuss more fully why the conclusions of the plaintiff's treating physicians were rejected, to complete a vocational review of the plaintiff's ability to perform in any occupation, and to explain why the plaintiff's favorable Social Security Disability benefits award was not considered more fully. (Op. at p. 24-27).

Pursuant to the Court's remand, Prudential obtained two independent medical file reviews (one from an orthopedist and another from a rheumatologist) of the plaintiff's medical records.

245753.1

Because Prudential was evaluating plaintiff's eligibility for benefits as of October 30, 2002, an independent medical examination of the plaintiff pursuant to the remand would not be applicable or pertinent. Thus, Prudential arranged for a file review of all of plaintiff's medical records in the file as well as the Social Security award letter. (See, Exhibit E to the Plaintiff's Second Motion for Summary Judgment ["Plaintiff's Motion"], D.I. 33) These reviews are not the sole basis of Prudential's decision to uphold its decision to terminate plaintiff's LTD benefits, but rather they provide the Court with an explanation of why the plaintiff's treating physician's conclusions were unreliable.

## II.   FACTUAL BACKGROUND

Plaintiff is a 50 year-old female who is claiming complete and total disability since May 1, 2000, after experiencing cervical and left arm pain and numbness following gardening activities. Plaintiff filed suit as a result of Prudential's termination of long-term disability (hereinafter "LTD") benefits. Plaintiff was afforded LTD benefits through Group Policy No. G-56249 (hereinafter the "Policy"), issued by Prudential to Banc One Corporation, her employer. The policy is an employee-sponsored benefit program, and as such is subject to the terms of the Employee Retirement Income Security Act (hereinafter "ERISA").

Plaintiff claims that she has been unable to resume working since May 1, 2000. She submitted a claim for LTD benefits due to post bilateral carpel tunnel surgery and cervical sprain/strain that occurred while she was employed as a Card Member Advocate Specialist. After the six month (182 day) elimination period, plaintiff received LTD benefits for the twenty-four (24) month period from October 20, 2000 through October 29, 2002 as a result of Prudential's determination that she remained unable to perform the "material and substantial duties" of her regular occupation as set forth in the policy. However, after the expiration of the initial twenty-

four (24) month disability period (which ended October 29, 2002), her eligibility for further benefits was contingent upon her physical inability to perform the duties of "<u>any gainful occupation</u>" for which she is reasonably fit by education, training or experience. <u>Id</u>. Plaintiff's LTD benefits were terminated effective October 29, 2002 because Prudential determined that the documentation supplied to them did not support an impairment that would prevent her from performing sedentary work.

Plaintiff appealed Prudential's initial decision on August 1, 2002. In her appeal, plaintiff indicated that she was not able to perform the duties of <u>any</u> gainful occupation due to painful arthritis, hand swelling, and neck pain. The new documentation that was considered in connection with this appeal included further medical records from Dr. Rowe and Dr. Tamesis, as well as the results of an Independent Medical Examination ("IME") performed by Dr. Bandera. Dr. Bandera performed the IME on October 30, 2002, and opined that plaintiff had the ability to perform at least a light duty job. (Please <u>see</u> Plaintiff's Appendix "30[1]") The physical exam revealed traces of swelling in the hand bilaterally, but no tenderness, warmth, crepitus or swelling relative to the shoulders, elbow or right wrist. <u>Id</u>. The IME further revealed that plaintiff did not have reproducible tenderness of the hands in the joints, except for the left exterior wrist. <u>Id</u>. Dr. Bandera found plaintiff's range of motion of her shoulder, elbows, wrists, hands, and fingers were all within normal limits, and she had normal range of motion. <u>Id</u>. Dr, Bandera found that plaintiff's motor and sensory examination, as well as her deep tendon reflexes, were normal.

---

[1] The administrative record prior to the remand is referenced in Plaintiff's Appendix to her first Motion for Summary Judgment (D.I. 20) and is incorporated herein at length by reference. Prudential is not annexing a copy of the voluminous record to avoid burdening the court. However, Prudential will provide a copy if requested.

3

245753.1

Id. This IME revealed that plaintiff's range of motion of cervical, thoracic, and lumbosacral spine were normal without tenderness, warmth, crepitus, or swelling. Id.

Dr. Bandera reported that plaintiff showed good strength on push/pull activities bilaterally, and that she was able to transfer from sit to stand in a normal manner and handled her documents without problem. Id. Dr. Bandera concluded that plaintiff had multiple complaints which did not correlate objectively. Id. Dr. Bandera indicated that there was no need for restrictions on sitting, standing, and walking activities, but that she may be restricted to lifting and carrying five to ten pounds frequently and should defer high impact activities. Id. Restrictions and limitations provided by Dr. Bandera, as well as medical evidence from plaintiff's treating physicians, supported plaintiff's ability to perform another occupation. Id.

After thoroughly reviewing this new documentation, Prudential determined that the documents did not reveal an impairment that would prevent plaintiff from performing the duties of a sedentary occupation and upheld its decision to terminate her claim for LTD benefits. (Please see Plaintiff's Appendix "12"). Prudential also conducted a Transferable Skills Analysis to determine plaintiff's employability within the restrictions and limitations outlined by Dr. Bandera, and, on November 27, 2002, provided plaintiff with a list of several occupations identified by this analysis. Id.

Plaintiff submitted a second appeal that was received by Prudential on February 28, 2003. In this second appeal, plaintiff claimed that she remained unable to work due to elbow, wrist, and knee pain. Included with plaintiff's second appeal was new documentation from: Dr. Tamesis, rheumatologist; Dr. Rowe, orthopaedist; and an appointment slip for surgery to have a ganglion cyst removed from her wrist with Dr. Ger, orthopaedist. In order to evaluate plaintiff's second appeal, Prudential forwarded a copy of Dr. Bandera's IME report to Dr. Ger, Dr. Rowe, and Dr.

Tamesis, offering plaintiff's own physicians an opportunity to comment on the information contained in the IME report. However, these physicians either declined to respond or submitted narratives that did not address the comments related to the IME that was performed. Based upon Prudential's review of the newly submitted medical documentation, in conjunction with Dr. Bandera's IME report, it was determined that plaintiff was capable of performing the duties of another gainful employment. Therefore, Prudential reasonably denied plaintiff's second appeal and upheld its decision to terminate her claim for LTD benefits effective October 30, 2002. (Please see Plaintiff's Appendix "16").

Plaintiff's third appeal was received by Prudential on December 4, 2003 and was reviewed by Prudential's Appeals Committee. Included with plaintiff's third appeal were further medical records dating from May 1995 through August 2003. In order to evaluate plaintiff's third appeal, Prudential arranged an external file review of the medical documentation contained in plaintiff's claim file with Patrick Foye, MD, a specialist in physical medicine and rehabilitation. (Please see Plaintiff's Appendix "31" and "32").

Dr. Foye noted that, based on his review of the medical records, plaintiff appeared to have some inflammatory poly arthritis, but that rheumatoid testing was negative. Id. Dr. Foye commented that plaintiff's recurrent inflammation/synovitis would be expected to create difficulty for her if she were required to perform repetitive hand activities on a frequent or continuous basis. Id. However, Dr. Foye explained that she would most likely be capable of performing an occupation with only occasional repetitive hand activities. Id. Dr. Foye also noted that plaintiff may have difficulty with repetitive overhead activities due to chronic neck and shoulder pain, but opined that with these limitations and restrictions, she would be expected to be

5

245753.1

able to work in a full time capacity. Id. In addition, the external medical review concluded that plaintiff would be capable of performing another occupation with some restrictions. Id.

Based upon Prudential's review of the medical file along with the findings of Dr. Foye, Prudential determined that the medical records were insufficient to support an inability of plaintiff to perform sedentary duties from October 2002 through April 2003. Therefore, Prudential reasonably denied plaintiff's third appeal and upheld its decision to terminate her claim for LTD benefits.

Litigation ensued and this Court, upon consideration of the parties' cross motions for summary judgment, ordered this case to be remanded to Prudential for a decision consistent with its Memorandum Opinion and Order.

### III.   DEFENDANT'S REVIEW ON REMAND

Prudential's review was limited to a determination of plaintiff's eligibility for LTD benefits *after* October 30, 2002. Thus, an independent medical examination pursuant to the remand would only provide Prudential of an assessment of Goletz' current abilities which has no bearing on her overall abilities at the end of 2002. In light of the above, Prudential arranged for an outside medical review of all of the records in the file including the social security award and the reports of plaintiff's treating physicians with physicians specializing in orthopaedics and rheumatology. In addition, a vocational assessment was arranged. (See, Exhibit E to the Plaintiff's Motion).

In its letter dated August 17, 2006, Prudential included an in-depth review and analysis of plaintiff's medical records and thoroughly discussed the records and opinions of the treating physicians. (See, Exhibit E to the Plaintiff's Motion) Dr. Bauer, an Orthopaedic surgeon, completed the medical file review and stated, "[t]his claimant has significant complaints of pain

6

245753.1

that are accepted on face value by her treating physicians. She is assigned a specific diagnosis that increase [sic] her sense of impairment. Her surgical explorations have shown minimal pathology and the objective testing shows minimal pathology…There is no evidence of ongoing significant functional impairment." He also states that the abnormalities of plaintiff's laboratory results are nonspecific and not lasting, and the response to treatment is not consistent with these findings. Plaintiff has mild degenerative arthritis in her knee and back which does not explain her pain. Her degenerative changes in the TFCC can be found in the normal population and her bone scan was negative which, is she was suffering from arthritis, would be expected to show evidence of an arthritic process. Lastly, the objective tests, including MRI, bone scan and lab tests, do not indicate significant abnormalities that would correlate with the plaintiff's pain. (See, Exhibit B to the Plaintiff's Motion, p. 6).

Dr. Karr, a rheumatologist, also performed a medical file review of the plaintiff's medical records and concluded that plaintiff's rheumatologist, Dr. Tamesis found evidence of synovitis on only one occasion. Dr. Karr further notes that after reviewing all of Dr. Tamesis' office notes, there was no further mention of synovitis or synovial thickening in the physical examinations. "Indeed, the overwhelming majority of exam findings throughout these notes do not mention soft-tissue swelling or synovial thickening. Furthermore, testing for rheumatoid factor was consistently negative as was ANA….[and] the report of the bone scan of the upper extremities was reported as normal. Although this study was done in an attempt to address the possibility of reflex sympathetic dystrophy, the study would typically indicate increased uptake in small joints in rheumatoid arthritis *if that condition were present and active*." [emphasis added] Dr. Karr also notes that the MRI of the left wrist dated 12/17/02 identified no evidence of synovitis or joint effusion, which weighed heavily against the presence of an underlying inflammatory

arthritis. *"**The notes from Dr. Tamesis do not provide a clinical basis for identifying a significant response to immunosuppressive therapy.**"* He concludes by finding that the medical records fail to identify a medical basis for underlying arthritis or any resulting impairment or restrictions. (See, Exhibit "B" to the Plaintiff's Motion)

Prudential also arranged for a vocational review in order to determine plaintiff's ability to perform in any occupation. The reviewer noted plaintiff's restriction as follows: at least light-duty capacity, no restrictions to length of sitting, no restrictions to standing or walking, ability to lift 5-10 pounds frequently and no high impact activities or fine manipulation. These restrictions and limitations were recommended by Dr. Bandera at his IME of the plaintiff and are far in excess of the no restrictions and no limitations identified by Drs. Bauer and Karr. While this vocational assessment was performed according to the restrictions and limitations identified by Dr. Bandera, it is submitted that the results of the review are consistent with the spectrum of opinions identified in this case. Taking all of the doctors' opinions together, Drs. Bauer and Karr could identify no restrictions and limitations for the plaintiff, Dr. Bandera identifies certain restrictions and limitations but opines that plaintiff could work light duty, Dr. Foye identifies similar restrictions and limitations (but recommends no repetitive hand activities) but agrees that plaintiff could work in a sedentary occupation, and Drs. Rowe and Tamesis indicate that plaintiff cannot work but neither gives a full functional capacity evaluation. (See, Plaintiff's Appendix at 41 and 42 and Exhibit C to the Plaintiff's Motion).

## IV. LEGAL ARGUMENT

### A. Standard of Review

The language of the Plan grants Prudential discretionary authority to determine when a participant is disabled. Accordingly, Prudential's determination must be upheld unless it is

8

245753.1

"arbitrary and capricious." See Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989); Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 44-45 (3rd Cir. 1993).

Under ERISA, the courts are required to apply a deferential standard of review if the relevant plan documents give the administrator or fiduciary discretionary authority to interpret the plan terms to determine eligibility for benefits. Id. Where the deferential standard of review applies, the court must uphold the administrator's decision so long as it is reasonable—even if the court disagrees with the decision. Id. at 45. Thus, as the Third Circuit noted under the arbitrary and capricious standard, the "court is not free to substitute its own judgment for that of the Defendants in determining eligibility for plan benefits." Orvosh v. Program of Group Insurance for Salaried Employees of Volkswagen of America, Inc., 222 F.3d 123, 129 (3rd Cir. 2000). In Firestone, the Supreme Court held that an action to recover plan benefits under ERISA §502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), should be judicially reviewed under an abuse of discretion standard if "the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan." Id. at 115.

Prudential's decision under the arbitrary and capricious standard should be affirmed if Prudential's determination is supported by substantial evidence in the record, even if the record also contains substantial evidence that would support a different result. Moats v. United Mine Workers of America Health and Retirement Funds, 981 F.2d 685, 689 (3rd Cir. 1992); Orvosh ("a plan administrator's decision will be overturned only if it is clearly not supported by the evidence on the record or the administrator has failed to comply with the procedures required by the plan.") (internal citation omitted).

Under this deferential standard, a court is not free to substitute its own judgment for that of the claims administrator (Prudential), and can only overturn the claim's administrators

9

decision only if it was "without reason, unsupported by the evidence or erroneous as a matter of law." <u>Martorana v. Board of Trs. of Steamfitters Local Union 420 Health, Welfare, and Pension Fund</u>, 404 F.3d 797, 801 (3rd Cir. 2005).

Because Prudential both funded and administered the Plan, it agrees that the proper standard of review for this ERISA claim is a sliding scale of heightened scrutiny of the arbitrary and capricious standard as set forth in <u>McLeod v. Hartford Life and Accident Ins. Co.</u>, 372 F.3d 618, 623 (3d Cir. 2004). <u>See</u> also, <u>Pinto v. Reliance Standard Life Ins.</u>, 214 F.3d 377, 390 (3rd Cir. 2000). The heightened scrutiny is a "sliding scale" that will allow each case to be examined on its own facts. <u>Id</u>. This "sliding scale" intensifies the degree of scrutiny to match the degree of conflict. Thus the less evidence there is of conflict on the part of the administrator, the more deferential the standard becomes. <u>Id</u>. at 392.

      **B.**    **Prudential is Entitled to Summary Judgment because the Plaintiff's Treating Physicians' Opinions and Conclusions Were Not Based on Substantial Evidence and in ERISA, a Treating Physician's Opinion is Not Entitled to Special Weight**

In the instant case, the Court denied both parties' cross motions for summary judgment and remanded the case to Prudential to make a determination consistent with the Court's Memorandum Opinion and Order. In effect, the Court wanted Prudential to discuss and explain its decision to terminate benefits more fully especially with regards to explaining why the plaintiff's treating physician's opinions were rejected. The court stated that it appeared that Prudential gave more weight to the opinions of Dr. Bandera and Dr. Foye and did not reference or discuss the opposing views expressed in the plaintiff's treating physicians. (Op. at 23) In order to comply with the Court's order, Prudential obtained a medical file review of plaintiff's entire claim record by a doctor in the field of orthopaedics and a doctor in the field of

245753.1

rheumatology, the specialties of plaintiff's treating physicians, Dr. Rowe and Dr. Tamesis. (See, Exhibit "B" attached to Plaintiff's Motion).

Initially, it is important to note that the United States Supreme Court in Black & Decker Disability Plan v. Kenneth L. Nord, 538 U.S. 822; 123 S. Ct. 1965 (2003), specifically and expressly held that disability claims (Plan) administrators are not obliged to accord special deference to the opinions of treating physicians in ERISA matters, stating that "plan administrators...may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But...courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; *nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.*" Id. at 833-834 (emphasis added). The Third Circuit adopted the Supreme Court's reasoning in Stratton v. Dupont De Nemours & Co., 363 F. 3d 250 (3rd Cir. 2004) and again more recently in Cerneskie v. Mellon Bank Long Term Disability Plan, 2005 U.S. App. LEXIS 11868 (June 21, 2005), recognizing that its opinion in Skretvedt v. E.I. DuPont de Nemours and Co., 268 F.3d 167, 184 (3d Cir. 2001) [2] conflicts with the Supreme Court's holding in Black & Decker. That plaintiff's treating physicians had concluded that she was unable to perform any occupation would not be entitled to "special weight" under the law as it has existed at least since Black & Decker. This is because courts have found that the opinions of a treating physician may also exhibit bias and conflict of interest. Stratton, 363 F.3d at 258. See also, Sweeney v. Standard Ins. Co., 276 F. Supp. 2d 388, 396

---

[2] This court cites to Skretvedt v. E.I. DuPont de Nemours and Co., 268 F.3d 167, 184 (3d Cir. 2001) in support of its position that the opinions of a claimant's treating physician are entitled to substantial and at times controlling weight. However, under Stratton and Cerneskie, the Third Circuit has overruled Skretvedt and held that a treating physician's evaluation is not entitled to any "special weight" in ERISA cases.

11

245753.1

(E.D. Pa. 2003) (reliance on the review of non-treating physicians is not a procedural anomaly that demands a heightened level of scrutiny); Schlegel v. Life Ins. Co. of N. Am., 269 F.Supp.2d 612, 627 (E.D. Pa. 2003) (the plan administrators' reliance on its own non-treating physician over the opinions of the insured's treating physicians did not render its decision to deny benefits arbitrary and capricious because in relying on its own non-treating physicians, the plan administrator violated no policy provision, nor did it render a decision that was arbitrary and capricious on this basis).

As evident from the medical file review of Dr. Bauer, an Orthopaedic surgeon, plaintiff's treating physician's opinions and conclusions that she is disabled from any occupation is not based on any substantial evidence. Dr. Bauer states that plaintiff has significant subjective complaints without any objective evidence of disease. In finding that plaintiff is not functionally impaired, he states, "[t]his claimant has significant complaints of pain that are accepted on face value by her treating physicians. She is assigned a specific diagnosis that increase [sic] her sense of impairment. [However], her surgical explorations have shown minimal pathology and the objective testing shows minimal pathology...There is no evidence of ongoing significant functional impairment." He also states that the abnormalities of plaintiff's laboratory results are nonspecific and not lasting, and the response to treatment is not consistent with these findings. Plaintiff has mild degenerative arthritis in her knee and back which does not explain her pain. Her degenerative changes in the TFCC can be found in the normal population and her bone scan was negative which would be expected to show evidence of an arthritic process. (See, Exhibit B to the Plaintiff's Motion pp. 5-6).

In addition, an in depth review and analysis of plaintiff's records was performed by Dr. Karr, a rheumatologist, who concluded that plaintiff's rheumatologist, Dr. Tamesis found

evidence of synovitis on only one occasion. Dr. Karr notes that after reviewing all of Dr. Tamesis' office notes, there was no further mention of synovitis or synovial thickening in the physical examinations. "Indeed, the overwhelming majority of exam findings throughout these notes do not mention soft-tissue swelling or synovial thickening. Furthermore, testing for rheumatoid factor was consistently negative as was ANA....[And] the report of the bone scan of the upper extremities was reported as normal. Although this study was done in an attempt to address the possibility of reflex sympathetic dystrophy, the study would typically indicate increased uptake in small joints in rheumatoid arthritis *if that condition were present and active*." [emphasis added] Dr. Karr also notes that the MRI of the left wrist dated 12/17/02 identified no evidence of synovitis or joint effusion, which weighed heavily against the presence of an underlying inflammatory arthritis. *"The notes from Dr. Tamesis do not provide a clinical basis for identifying a significant response to immunosuppressive therapy."* [emphasis added.] He concludes by finding that the medical records fail to identify a medical basis for underlying arthritis or any resulting impairment or restrictions. (See, Exhibit B to the Plaintiff's Motion)

Thus, Prudential reviewed the opinions of plaintiff's doctors as well as the opinions of Dr. Bandera, Dr. Foye, Dr. Bauer, and Dr. Karr to render a determination that the record did not support a long term disability. This decision under any standard of heightened review is not arbitrary or capricious but based on substantial evidence.

### C. Plaintiff's Social Security Award is Merely a Factor to Consider in an ERISA Claim and Prudential is Not Bound to Follow the Findings of the Social Security Administration's Findings

The Court's remand further suggests that Prudential failed to consider plaintiff's favorable social security award. However, "the findings of [an] administrative law judge have no bearing on [a] court's determination whether the decision to deny benefits was arbitrary and

13

245753.1

capricious." Russell v. Paul Revere Life Ins. Co., 148 F. Supp. 2d 392, 409 (D.Del. 2001), aff'd by, Russell v. Paul Revere Life Ins. Co., 288 F.3d 78 (3d Cir. 2002).  See also, Dorsey v. Provident Life and Accident Ins. Co, 167 F. Supp. 2d 846, 856, n.11 (E.D. Pa. 2001) (it is well settled that a Social Security award is not binding on a claim administrator.[3]).  "A plan administrator's decision on ERISA disability that differs from that of the SSA [Social Security Award] is not arbitrary and capricious provided it is reasonable and supported by substantial evidence."  Russell, 148 F. Supp. 2d at 409.

Plaintiff appears to take exception to the fact that the medical file reviews by Dr. Bauer and Dr. Karr fail to discuss the social security award.  However, the administrative law judge reviewed the same medical records that the peer review doctors did and there was no further need to discuss the administrative judge's findings.  In addition, as the Social Security Administration ("SSA") has different criteria in awarding benefits than the ERISA plan at issue, the award offers little comparative value in this case.  For example, in the list of the medical records viewed by the social security administrative judge, it is clear that the record viewed by the SSA and Prudential are quite different. (See, Plaintiff's Appendix 33)  The SSA did not have the benefit of any opposing doctor's reviews.  As stated earlier, the Social Security Act has a "treating physician rule."  This requires administrative law judges to give controlling weight to the findings and opinions of a treating physician.  Black & Decker Disability Plan v. Kenneth L. Nord, 538 U.S. 822; 123 S. Ct. 1965 (2003).  As readily apparent from a side by side

---

[3] Unlike ERISA regulations, the Social Security Act has a "treating physician rule."  This requires administrative law judges to give controlling weight to the findings and opinions of a treating physician.  Black & Decker Disability Plan v. Kenneth L. Nord, 538 U.S. 822; 123 S. Ct. 1965 (2003).  Thus, a social security award for disability benefits cannot be binding upon the administrator of the plan when, under ERISA, a plan administrator is not required to adopt a "treating physician rule."

245753.1

comparison, the administrative law judge's review of the medical file was not identical to the medical records in plaintiff's LTD claim. Thus, his decision to award social security disability benefits was based on different criteria and evidence and is only a factor to consider in an ERISA case but offers no real comparative value. A social security award for disability benefits cannot be binding upon the administrator of the plan when, under ERISA, a plan administrator is not required to adopt a "treating physician rule." Id.

### D.    The Vocational Assessment Substantially Complies with the Court's Memorandum Opinion and Order

Lastly, the Court called for a vocational assessment of plaintiff's ability to perform in any occupation. The reviewer noted plaintiff's restriction as follows: at least light-duty capacity, no restrictions to length of sitting, no restrictions to standing or walking, ability to lift 5-10 pounds frequently and no high impact activities or fine manipulation. These restrictions and limitations were recommended by Dr. Bandera at his IME of the plaintiff and are far in excess of the no restrictions and no limitations identified by Drs. Bauer and Karr. While this vocational assessment was performed according to the restrictions and limitations identified by Dr. Bandera and not Dr. Foye, it is submitted that the results of the review are consistent with the spectrum of opinions identified in this case. Taking all of the doctors' opinions together, Drs. Bauer and Karr could identify no restrictions and limitations for the plaintiff, Dr. Bandera identifies certain restrictions and limitations but opines that plaintiff could work light duty, Dr. Foye identifies similar restrictions and limitations (with the additional limitation of limited repetitive hand activity) but agrees that plaintiff could work in a sedentary occupation, and Drs. Rowe and Tamesis indicate that plaintiff cannot work but neither gives a full functional capacity evaluation.

245753.1

## V. **CONCLUSION**

Prudential's determination during remand exhibits no procedural abnormalities or inconsistent treatment of the factual claims on record before this court. Consequently, Prudential submits that its determination should be upheld as the record lacks documentation which clearly states that plaintiff's injury or sickness renders her incapable of performing any job duties.

WHEREFORE, defendant The Prudential Insurance Company of America respectfully requests that this Court deny plaintiff's motion for summary judgment and grant its cross-motion for summary judgment on the grounds that defendant was not arbitrary or capricious when it issued its termination of long term benefits.

Respectfully Submitted,

BIFFERATO GENTILOTTI LLC

BY:   /s/ James E. Drnec
      James E. Drnec, Esquire
      800 N. King Street
      Wilmington, DE 19801

      Attorneys for Defendant
      The Prudential Insurance Company
      of America

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Jonathan Dryer, Esquire
The Curtis Center, Suite 1130E
Independence Sq. West
Philadelphia, PA 19106
215-627-6900

Dated: April 27, 2007

245753.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MOIRA GOLETZ,

        Plaintiff,

    v.                          Civil Action No.: 04-351

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

        Defendant.

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of April, 2007, two copies of DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT were served via first class mail, postage prepaid to:

GRADY & HAMPTON, L.L.C.
Laura F. Browning, Esq.
John S. Grady, Esq.
6 North Bradford Street
Dover, DE 19904

                                      BIFFERATO GENTILOTTI, LLC

                                      James E. Drnec, Esq. (#3789)
                                      800 N. King Street; Plaza Level
                                      Wilmington, DE 19801
                                      Tel: (302) 429-1900

                                      *Counsel to Defendant*

245753.1