## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MOIRA GOLETZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 04-351-SLR-LPS |
| | ) | |
| PRUDENTIAL INSURANCE COMPANY | ) | |
| OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

John S. Grady, Esquire, of Grady & Hampton, LLC, Dover, Delaware.  Counsel for Plaintiff.

Maria J. Poehner, Esquire, of Bifferato Gentilotti, LLC, Wilmington, Delaware.  Counsel for Defendant.

## REPORT & RECOMMENDATION REGARDING
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

September 26, 2008

## I.  **INTRODUCTION**

Plaintiff Moira Goletz filed this action on June 3, 2004 alleging claims pursuant to the Employment Retirement Income and Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et. seq., against defendant Prudential Insurance Company of America ("defendant"). (D.I. 1) She seeks recovery of long-term disability benefits allegedly due under a policy of insurance issued by defendant to her employer, clarification of her rights under the policy, and costs and attorney's fees as provided by ERISA. (*Id.* at ¶1) This court has jurisdiction over the matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(f).

On March 29, 2006, the Court concluded that defendant's decision to deny plaintiff benefits was arbitrary and capricious. It remanded the case to defendant for further review of plaintiff's claim. (D.I. 32) ("Remand Order") After defendant again denied plaintiff's claim for benefits, the case is now before the Court again on the parties' cross-motions for summary judgment.

For the following reasons, I recommend that plaintiff's motion for summary judgment be denied and that defendant's motion for summary judgment be granted.

## II.  **BACKGROUND**

The facts and procedural history of this case through early 2006 are fully recited in *Goletz v. Prudential Ins. Co. of America*, 425 F. Supp. 2d 540 (D. Del. 2006) (*Goletz I*). Because much of that background is also relevant to the motions now before the Court, I will excerpt extensively from the earlier opinion.

1

**The Plan's Definition Of "Disabled"**

On January 1, 2000, plaintiff's employer, Bank One, obtained a long-term disability plan,

Policy DG-56249-IL ("the Plan"), through defendant for its regular, salaried, and commissioned

employees. (D.I. 26 at A-2) Defendant both administers and funds the Plan. (*Id.* at A-11, A-258)

As a full-time employee, plaintiff was insured under the Plan. (*Id.* at A-2, A-258)

The Plan provided for the payment of long-term disability benefits to covered employees

who met the definition of "disabled." The Plan defined "disabled" as follows:

> You are disabled when Prudential determines that: you are unable to perform the
> ***material and substantial duties*** of your ***regular occupation*** due to your ***sickness*** or
> ***injury,*** and you have a 20% or more loss in your ***indexed monthly earnings*** due to
> that ***sickness*** or ***injury.*** <u>After 24 months of payments, you are disabled when</u>
> <u>Prudential determines that due to the same sickness or injury, you are unable to</u>
> <u>perform the duties of any</u> ***gainful occupation*** <u>for which you are reasonably fitted by</u>
> <u>education, training or experience</u>.

(*Id.* at A-11) (bold emphasis in original; underlined emphasis added)

"Gainful occupation" is defined as "an occupation, including self employment, that is or

can be expected to provide [employee] with an income equal to at least a percentage of

[employee's] indexed monthly earnings within 12 months of [employee's] return to work,

depending on the plan for which you are enrolled." (*Id.*) Plaintiff had enrolled in Option II,

which made the relevant percentage of monthly earnings 70%. (*Id.* at A-258)

**Plaintiff's Undisputed Initial Disability**

Plaintiff, who is now 50 years old and has a high school education, began working as a

full-time employee for First USA Bank (which later became Bank One Corp.) in 1997. (*Id.* at

A-231) She was hired as a Customer Service Representative and was later promoted to

2

Cardmember Advocacy Specialist. (*Id.* at A-258) "Plaintiff went on disability leave in May of

2000 due to constant pain in her neck, hands, arms, elbows, and other joints." *Goletz I*, 425 F.

Supp. 2d at 542 (citing D.I. 26 at A-231). Defendant granted plaintiff disability benefits for a

twenty-four month period from October 30, 2000 through October 29, 2002. (D.I. 26 at A-68-71)

## **Plaintiff's Medical History And Defendant's Denial Of Long-Term Disability Benefits**

Plaintiff's relevant medical history, and the purported bases for defendant's repeated

denials of long-term disability benefits, is set forth in *Goletz I*, 452 F. Supp. 2d at 544-49:

> In 1993, plaintiff was diagnosed with bilateral carpal tunnel
> syndrome by her orthopedist, Dr. Glen D. Rowe. (Id. at A-459) . . .
> . [In] 1999 . . . she was diagnosed with left ulnar nerve palsy and
> left wrist irritation. (Id. at A-454) . . . . [Despite surgery,] plaintiff's
> pain remained constant and she began experiencing neck pain and
> back spasms. (Id. at A-450) . . .
>
> In March of 2000, plaintiff underwent gall bladder surgery.
> (Id. at A-448) She subsequently went on disability leave from Bank
> One on May 1, 2000. (D.I. 26 at A-45) . . .
>
> Due to plaintiff's scheduled surgery for anterior
> intramuscular ulnar nerve transportation and release of a medial
> conjoined tendon of the right elbow in September of 1999,
> defendant determined that she was unable to perform the material
> and substantial duties of her job. (Id. at A-68 and A-69) . . .
>
> On February 14, 2001, plaintiff appeared at Dr. Rowe's
> office complaining of right elbow pain and left wrist pain. (Id. at A-
> 441) She stated that she was unable to lift her arm because of pain
> and numbness in the right elbow. (Id.) Shortly thereafter, Dr. Rowe
> informed defendant that plaintiff was unable to work at any
> occupation because of pain and spasms in her cervical spine. (D.I.
> 26 at A-245)

Based on a referral from Dr. Rowe, plaintiff was evaluated by orthopedist and rheumatologist, Dr. Eric R. Tamesis.  (D.I. 27 at A-439-440)  He diagnosed her with polyarthritis, bilateral carpal tunnel syndrome, and lateral and medial epicondylitis of the right elbow, noting pain in the right elbow, neck and left wrist.  (Id. at A-478-479) . . .

On October 22, 2001, plaintiff underwent an MRI of her cervical spine which revealed degenerative disc disease.  (Id.)  Plaintiff continued to suffer from left wrist pain as well as pain and spasms in her cervical spine throughout January of 2002.  (Id.)  Consequently, in a letter dated January 16, 2002, Dr. Rowe informed defendant that plaintiff's back condition made her unable to work.  (D.I. 26 at A-245) . . . .

On February 4, 2002, Dr. Tamesis confirmed his previous diagnosis of polyarthritis, also noting that plaintiff displayed features of fibromyalgia syndrome.  (Id.)

On June 24, 2002, defendant informed plaintiff that her long term disability benefits would terminate on October 29, 2002.  (D.I. 26 at A-71)  Defendant explained that,

> [a]fter a thorough evaluation of the information provided, we have determined that although you continue to experience knee and wrist pain, the medical documentation does not support an impairment preventing you from performing the necessary and substantial functions of any occupation.  We find that you maintain the functional ability to perform in a sedentary occupation that does not require repetitive hand work.

> . . .

In a responsive letter written by Dr. Tamesis on July 11, 2002, he informed defendant that plaintiff suffered from inflammatory polyarthritis which tremendously limited her ability to do any significant activities of daily living.  Specifically, he noted that "[t]his markedly impairs her ability to participate in any occupation at this time resulting in her current disability."  (Id. at A-471)  On July 24, 2002, Dr. Rowe sent a similar letter to defendant, indicating that plaintiff's persistent pain and spasm in her cervical

4

spine made her unable to work.  (D.I. 26 at A-247)

. . .

On September 5, 2002, defendant's claims manager, Michelle Pence, reviewed plaintiff's recent medical records with Dr. Foye, a consultant for defendant.  Per their discussion, an Independent Medical Exam ("IME") was ordered, specifically "with either ortho, rheumatologist or rehab dr."  (Id. at A-56)

On October 22, 2002, defendant informed plaintiff that she would need to undergo an IME with physiatrist, Dr. Peter Bandera.  (D.I. 26 at A-81)  Plaintiff attended the comprehensive examination, assessment, and record review on October 30, 2002.  (D.I. 26 at A-211)  After the fifteen minute meeting with plaintiff and evaluating her complaints, medical history, radiological reports and the opinions of plaintiff's treating doctors, Dr. Bandera contradicted the core findings of both Dr. Rowe and Dr. Tamesis.  (Id. at A-213)

. . .

Dr. Bandera concluded that plaintiff "has multiple subjective complaints that do not correlate objectively."  (Id.) . . .  Ultimately, Dr. Bandera concluded that plaintiff could perform in a light duty capacity and return to a work environment which adhered to the specified modifications.  (Id.)

. . .

On November 27, 2002, defendant informed plaintiff that the Appeals Review Unit had upheld the decision to terminate her long term disability benefits.  (Id. at A-83) . . .

In February of 2003, plaintiff made a second appeal to defendant for long term disability benefits.  (Id. at A-86)  In her appeal, plaintiff stated that she was unable to return to work due to elbow, wrist, and knee pain.  (Id.) . . .  She also attached two new medical opinions written by Dr. Tamesis and Dr. Rowe.  (Id.)  In his January 8, 2003 opinion, Dr. Tamesis certified that he had diagnosed plaintiff with rheumatoid arthritis,

> [a] severe disabling inflammatory arthritis that
> results in multiple joint swelling and destruction of

5

> the joints.  This markedly limits her activities of
> daily living, most especially those that require
> repetitive movements.  I have now started her on
> Remicade infusion therapy that [ ] requires she
> receive these every 8 weeks at the minimum to help
> control the disease process.  While this is ongoing
> and until we can control the disease[,] I feel she
> continues to be disabled from any occupation.

(D.I. 27 at A-468)  Similarly, Dr. Rowe's narrative, written February
10, 2003, indicated that plaintiff suffered from: (1) "First degree
MCL sprain and degenerative joint disease of the left knee"; (2)
"Triangular fibrocartilage tear of the left wrist"; (3) "Right elbow
olecranon bursitis"; (4) "Cervical and thoracic strain"; (5)
"Degenerative disc disease of the cervical spine"; and (6)
"Lumbosacral strain."  (D.I. 26 at A-251)

On May 8, 2003, both Dr. Rowe and Dr. Tamesis again sent
opinions to defendant detailing plaintiff's inability to work.  (D.I. 26
at A-252-253)  In his statement, Dr. Rowe mentioned plaintiff's
recent knee surgery, as well as her complaints of "triangular
fibrocartilage complex tear of the left wrist, right elbow olecranon
bursitis, cervical and thoracic strain, degenerative disc disease of the
cervical spine, and lumbosacral strain."  (Id. at A-252)  He also
noted that plaintiff was to return for a re-evaluation on May 28,
2003 and that her ability to work would then be addressed.  (Id.)  In
Dr. Tamesis' statement, he certified that plaintiff's seronegative
inflammatory arthritis, generalized degenerative joint disease and
bilateral carpal tunnel syndrome had significantly impacted her
activities of daily living.  (Id. at A-253)  Specifically, "she has
significant difficulty in range of motion of her hands. This limits her
ability to lift objects above 10 pounds, she also has significant
difficulty grasping objects and doing repetitive tasks as grip remains
weak ...."  He also noted that while Remicade infusion therapy had
improved soft tissue swelling in her hands, "her pains remain
significant."  (Id.)

Notwithstanding these letters, defendant again denied
plaintiff's request for long term disability benefits on May 12, 2003.
(Id. at A-93) . . .

On May 23, 2003, plaintiff appealed defendant's decision to
deny benefits.  (Id. at A-97)  Shortly thereafter, plaintiff sent

6

defendant an opinion from Dr. Tamesis responding to Dr. Bandera's IME. (Id. at A-254) Dr. Tamesis stated that at the time of plaintiff's evaluation with Dr. Bandera, she was being treated with Methotrexate, a potent immunosuppressive agent. (Id.) Accordingly, Dr. Bandera's opinion was based on an evaluation that took place while the plaintiff was under the influence of strong medication. (Id.) In response to Dr. Bandera's observations of a lack of swelling, Dr. Tamesis noted that plaintiff's condition could produce generalized joint pain and stiffness, even in the absence of swelling. (Id.) He also found Dr. Bandera's diagnosis of negative inflammatory arthritis incorrect. (Id.) In Dr. Tamesis' opinion, plaintiff suffered from seronegative rheumatoid arthritis. (Id.) In connection with plaintiff's subjective complaints, Dr. Tamesis posited that her subjective symptoms "certainly correlate with objective findings," and her condition has markedly impacted her activities of daily living--an observation Dr. Tamesis believed could not be made in a one time evaluation. (Id. at A-255) Furthermore, Dr. Tamesis stated that plaintiff's chronic stiffness and joint pain prevented her from sitting, walking or standing for long periods of time and, despite the use of various analgesics, plaintiff's chronic pain remained significant. (Id.)

. . . On November 19, 2003, [Social Security] Administrative Law Judge Linda M. Berstein, ruled in favor of plaintiff [on her application for Social Security disability benefits], finding that she was disabled by the fact that she was unable "to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment ...." (Id. at A-230)

On December 9, 2003, defendant's Appeal Review Unit forwarded plaintiff's file to Dr. Foye for an external file review. (Id. at A-64) Dr. Foye had never treated nor examined plaintiff and is paid an hourly rate of $300 by defendant. (D.I. 27 at A-558) He completed a report on December 30, 2003, and added an addendum on February 10, 2004. (D.I. 26 at A-214 - A224) Based on review of all of plaintiff's medical records, Dr. Foye concluded that plaintiff's conditions with respect to her cervical, lumbar, and thoracic spine, as well as her left knee, did not prevent her from engaging in sedentary work. (Id. at A-223) He did find, however, that

[f]rom the combination of the physical exam

7

> findings by Dr. Tamesis and also the evaluation by
> Dr. Bandera, and also the blood work results, overall
> it does appear most likely that the claimant does have
> some type of inflammatory poly arthritis, although
> she is sero-negative for rheumatoid arthritis.

(<u>Id</u>.)  Consequently, plaintiff's recurrent inflammation/synovitis in
her hands would create difficulty for her if required to perform
frequent or continuous repetitive hand activities.  (<u>Id</u>. at A-224)  Dr.
Foye noted that plaintiff would most likely be capable of
performing repetitive hand activities "occasionally," as in less than
one third of the workday.  (<u>Id</u>.)  He also noted that she might have
difficulty with overhead activities, due to chronic neck and shoulder
pain.  (<u>Id</u>.)  He then concluded, stating that

> [w]ith these restrictions / limitations /
> accommodations in place, I would expect that she
> would be capable of full time work.  I recommend
> considering vocational assessment to determine if
> such work is actually available to her in the
> workplace, and whether this would represent gainful
> employment for her.

(<u>Id</u>.)

On March 15, 2004, defendant again notified plaintiff that
she was capable of performing duties of a gainful occupation.  (<u>Id</u>.
at A-106)  . . .  Defendant did not note Dr. Foye's recommendation
for vocational assessment to determine whether appropriate work
was actually available for the plaintiff.  (<u>Id</u>. at A-106)  Rather,
defendant used the gainful occupations that were previously
identified on October 20, 2002 and the restrictions and limitations
provided by Dr. Bandera and Dr. Foye as a means of upholding its
previous decision to deny long term disability benefits.  (<u>Id</u>. at A-59,
A-106)  The letter made no mention of Dr. Tamesis' responsive
letter to Dr. Bandera's IME, nor did it speak to the findings of any of
plaintiff's treating physicians.  (<u>Id</u>. at A-104 - 106)  It did mention
plaintiff's favorable Social Security Disability award, stating that

> Prudential determines eligibility for [ ] benefits based
> on the terms of the Group Policy, separate from
> criteria used by the Social Security Administration in
> determining eligibility for Social Security Disability
> Benefits.  Prudential must evaluate claims based on

8

> terms of the Group Policy independent of the Social
> Security Administration.

(Id. at A-106)

This litigation, filed on June 3, 2004, followed. (D.I. 1)

## **This Court's Earlier Opinion**

In considering the parties' earlier cross-motions for summary judgment, this Court in *Goletz I* determined that defendant's decision to deny benefits was arbitrary and capricious and, accordingly, remanded the case to defendant for further review. The Court found that defendant "impermissibly used evidence that supported the denial of plaintiff's benefits while ignoring or failing to satisfactorily explain its rejection of evidence supporting the award of such benefits." 425 F. Supp. 2d at 553. The record demonstrated that defendant "was self-serving in its consideration of the evidence." *Id.* at 551; *see also id.* at 552 (explaining there was "evidence that defendant was acting in a self-interested manner").

Stating "there is a host of evidence the administrator neglected to analyze," the Court identified three categories of evidence that required further consideration: "The court finds there are factual issues regarding the extent of plaintiff's condition due to her treating physicians' reports, plaintiff's ability to perform in any occupation due to the lack of vocational evidence on this issue and the impact of the Social Security Administration's favorable determination for plaintiff." *Id.* at 553 (emphasis added).

The Court continued:

> For all the above reasons, the court finds that defendant
> impermissibly used evidence that supported the denial of plaintiff's
> benefits while ignoring or failing to satisfactorily explain its

9

> rejection of evidence supporting the award of such benefits.
> Accordingly, the court finds that defendant engaged in
> impermissible self-dealing and its decision under the heightened
> standard was arbitrary and capricious.
>
> . . . As a result, the court grants plaintiff's motion in part and
> remands to defendant for reconsideration consistent with this
> memorandum opinion.

*Id.*

## Remand Proceedings

On remand, defendant obtained two independent reviews of plaintiff's medical records as

well as a vocational assessment of plaintiff's ability to perform in any occupation. (D.I. 36) Dr.

Bauer, an orthopaedic surgeon, completed a medical file review and concluded that plaintiff "has

significant subjective complaints without objective findings." (D.I. 33 Ex. B) Thus, Dr. Bauer

found no evidence of functional impairment relating to a rheumatologic or orthopaedic condition

from October 30, 2002 forward. (*Id.*) Dr. Karr, a rheumatologist, likewise reviewed plaintiff's

medical records. He opined that plaintiff "is not functionally impaired due to an underlying

rheumatologic condition/inflammatory arthritis." (*Id.*)

The vocational consultant ("VC"), Sue Howard, relied on the October 30, 2002 narrative

report of Dr. Bandera, the physiatrist who had conducted the IME following a 15-minute

appointment with plaintiff. (D.I. 33 Ex. C) VC Howard noted plaintiff's restrictions and

limitations as follows: she had at least light-duty capacity; she did not need any restrictions to

length of sitting, standing, or walking; she should be restricted from lifting and carrying five to ten

pounds frequently; and she should not perform high-impact activities or fine manipulation. (*Id.*)

With this residual functional capacity, and based on plaintiff's education, work experience, and

transferable skills, VC Howard concluded that plaintiff was qualified to work in a sedentary

occupation – such as secretary, clerk, or receptionist – and opportunities to do so existed in

reasonable numbers in the area of Dover, Delaware. (*Id.*)

On August 17, 2006, after further review of plaintiff's file, defendant re-affirmed its prior

decisions to deny plaintiff's benefits, stating that plaintiff's "medical conditions did not impair her

from performing the material and substantial duties of any gainful occupation as of October 30,

200[2]." (D.I. 33 Ex. E) Plaintiff and defendant then filed the cross-motions for summary

judgment that are presently before the Court.

## III. **LEGAL STANDARDS**

A court shall grant summary judgment only if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine

issue of material fact is in dispute. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574,

586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if

evidence exists from which a rational person could conclude that the position of the person with

the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance*

*Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party

then "must come forward with 'specific facts showing that there is a genuine issue for trial.'"

*Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying

facts and all reasonable inferences in the light most favorable to the party opposing the motion."

*Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence

in support of the nonmoving party, however, will not be sufficient for denial of a motion for

summary judgment; there must be enough evidence to enable a jury to reasonably find for the

nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If

the nonmoving party fails to make a sufficient showing on an essential element of her case with

respect to which she has the burden of proof, the moving party is entitled to judgment as a matter

of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Omnipoint Comm. Enters., L.P. v.*

*Newtown Twp.*, 219 F.3d 240, 242 (3d Cir. 2000).

Specific legal standards are applicable to cases involving review of ERISA administrators'

decisions to deny benefits. As the Court explained in *Goletz I*, 452 F. Supp. 2d at 551:

> Courts apply a heightened arbitrary and capricious standard of review
> where the administrator's decision is potentially clouded by a conflict of interest
> based on both its funding and administration of the plan. See Pinto v. Reliance
> Standard Life Ins. Co., 214 F.3d 377, 390 (3d Cir.2000). It is undisputed that
> defendant also funds the plan which it administers. (D.I. 26 at A-11, A-258) Thus,
> a heightened arbitrary and capricious review is appropriate. "While the heightened
> standard is deferential, it is not absolutely so." Blakely, 2004 WL 1739717 at 8
> (citing Pinto, 214 F.3d 377 at 393). Courts are instructed to use a sliding-scale
> approach, "intensifying the degree of scrutiny to match the degree of conflict,"
> when determining the amount of deference to grant the administrator. Pinto, 214
> F.3d 377 at 379. Accordingly, courts should not only look at whether the result is
> supported by reason, but at the process by which the determination was made. Id.
> at 393. Ultimately, however, the inquiry is fact specific and must be considered
> under the totality of the circumstances. Id. The Third Circuit has noted the
> presence of certain factors which suggest that the administrator's decision was
> arbitrary and capricious. Id. Such facts include decision reversals in the absence
> of new medical information; use of self-serving and selective use of medical
> evidence; and indications that the administrator's determination conflicts with its
> own employee's internal recommendations. Id. at 393-394. See e.g. Sanderson v.
> Continental Cas. Corp., 279 F. Supp. 2d 466, 473 (D. Del. 2003).

## IV.  DISCUSSION

Plaintiff argues that defendant's decision on remand again to deny her disability benefits was arbitrary and capricious.  In support of her position she asserts that defendant proceeded in a manner contradictory to what was required under this Court's Remand Order.  Plaintiff interprets the Remand Order as requiring defendant to re-evaluate the evidence of record; instead, according to plaintiff, defendant expanded the record by obtaining new medical and vocational evaluations – and then denied plaintiff the opportunity to respond.  Even with the new evaluations, the denial decision was arbitrary and capricious, according to plaintiff, because defendant failed to give proper weight to the opinions of plaintiff's treating physicians, relied on a vocational assessment that ignored supported limitations on plaintiff's hand activities, and disregarded the Social Security Administration's (SSA) award of disability benefits to plaintiff.

Defendant, by contrast, insists it complied with the Remand Order.  Defendant finds nothing in the Remand Order precluding it from obtaining new evaluations of plaintiff's file nor requiring it to permit plaintiff to respond to the new evaluations.  According to defendant, the two new medical evaluations do not constitute new evidence but, rather, provide the explanation for why defendant did not adopt the conclusions of plaintiff's treating physicians.  Further, the new vocational review took into account the restrictions and limitations supported by the evidence.  Finally, defendant argues that its consideration of the SSA award was adequate.

For the following reasons, I recommend that defendant's motion for summary judgment be granted.  I conclude that defendant's manner of proceeding on remand, by obtaining the additional reviews, was consistent with the Remand Order.  I further conclude that the new medical reviews of Drs. Bauer and Karr provide a non-arbitrary and capricious basis for defendant's rejection of

13

the opinions of plaintiff's treating physicians. The opinion of the new VC, Ms. Howard, is also supported by the record. Finally, while it continues to be unclear how much, if any, weight defendant gave to the SSA's finding of disability, that failing alone does not require a remand to rectify.

## A.    Defendant's Decision To Obtain Additional Evaluations Was Not Inconsistent With The Remand Order

As already noted, on remand defendant obtained two new medical evaluations of plaintiff's medical records as well as a new evaluation from a vocational consultant. Prudential elected to have two doctors of the same practice areas as plaintiff's treating physicians review their office visit notes, reports, and test results as well as all the other medical documents in the claim file. (D.I. 35 at 13)  Plaintiff argues that this approach is inconsistent with the Remand Order, which in plaintiff's view limited defendant to the evidence that was already in the record. *See, e.g.*, D.I. 40 at 2.  I disagree.

Nothing in the Remand Order precluded defendant from obtaining the new evaluations. The Remand Order directed defendant to accord more weight to the conclusions of treating physicians Rowe and Tamesis "<u>or</u>, at the very least, [provide] a thorough and fully supported discussion of why their conclusions were rejected." *Goletz I*, 452 F. Supp. 2d at 552 (emphasis added). It placed no limitations on how defendant could go about determining the weight to accord the treating physicians' opinions or, alternatively, how it would prepare the explanation of its rejection of those opinions. By obtaining independent medical file reviews from physicians who are specialists in the same fields as Rowe and Tamesis – from Bauer, an orthopedist, and Karr, a rheumatologist – defendant was acting consistent with this Court's direction to determine

14

or explain the proper weight to give to the opinions of these treating physicians.

Nothing about the Remand Order's directions with respect to defendant's consideration of the vocational expert's analysis and the SSA's decision to award plaintiff disability benefits precluded defendant from obtaining the new medical or vocational reviews. To the contrary, in *Goletz I* this Court faulted defendant for failing to accept the suggestion of consultant Dr. Foye to obtain a vocational assessment. *See id.* at 551-52. By soliciting VC Howard's opinion, defendant was acting consistent with the Remand Order.

A related criticism voiced by plaintiff is that defendant denied her the opportunity to respond to the new evaluations before defendant made its determination again to deny plaintiff benefits. Plaintiff, as well as her treating physicians Rowe and Tamesis, had provided extensive input at every step of defendant's consideration of plaintiff's application prior to the remand. Indeed, as the Court emphasized in *Goletz I*, to that point "defendant solicited additional information from plaintiff at every level of the appeals process." *Id.* at 551 (emphasis added). Plaintiff had a reasonable expectation that the process going forward would be similar. Drs. Rowe and Tamesis were willing to provide defendant with additional feedback. It is troubling that defendant denied plaintiff this opportunity, particularly when attempting to justify a decision that had already been deemed arbitrary and capricious by the Court.

However, as defendant correctly observes, "the court's remand did not open the claim to another appeals process. Instead, the court's opinion charged Prudential to provide a more detailed explanation of its decision, whatever that turned out to be." (D.I. 35 at 3) The burden, thus, was on defendant, not on plaintiff, and it was a burden to explain its decision. It is now for the Court to determine whether defendant has met that burden of explanation. In doing so, the

15

Court has the benefit of plaintiff's responses to – and critiques of – defendant's new evaluations. That evaluation can be made by the Court, necessarily with the input of plaintiff, even though plaintiff was not, unfortunately, permitted to provide its input into defendant's remand decision.

In sum, this case was "remanded to defendant for reconsideration consistent with" the opinion in *Goletz I.* 452 F. Supp. 2d at 553. Defendant's decision to obtain new medical and vocational evaluations was in no way inconsistent with this Court's earlier opinion.

## B.   Defendant Has Provided An Adequate Explanation Of Its Rejection Of The Opinions Of Plaintiff's Treating Physicians

Generally, under ERISA a treating physician's evaluation is not entitled to any "special weight," and courts may not impose on plan administrators a duty to explain when they credit reliable evidence that conflicts with a treating physician's evaluation. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). However, "[p]lan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* at 834. Moreover, plan administrators must show that they are not engaging in arbitrary or self-dealing conduct when choosing to credit particular evidence over contradictory findings. *See Mitchell v. Prudential Health Care Plan*, 2002 WL 1284947, at *9 (D. Del. June 10, 2002).

Under the circumstances of this case, defendant does have a duty of explanation. In the Remand Order, this Court held: "Dr. Tamesis' and Dr. Rowe's conclusions were entitled to more weight or, at the very least, a thorough and fully supported discussion of why their conclusions were rejected." *Goletz I*, 452 F. Supp. 2d at 552. On remand, therefore, defendant was required either to give more weight to the opinions of the treating physicians (Tamesis and Rowe) that

16

plaintiff was disabled or, alternatively, explain why those opinions were being rejected. Here,

defendant chose the latter course. I find that while defendant could have been more thorough in

explaining the bases for its rejection of the treating physicians' opinions, its explanations were,

nonetheless, adequate.

In *Goletz I*, the Court observed: "The record at bar is devoid of any evidence indicating

that the opinions of defendant's physicians were not supported or reliable." *Id.* Now, however,

the record contains the detailed analyses of Drs. Bauer and Karr, who reviewed plaintiff's medical

records and found they did not support the conclusions of disability reached by Drs. Rowe and

Tamesis. As defendant repeatedly describes in its filings to the Court,

> Prudential's August 17, 2006 letter includes an in-depth review and analysis of the
> plaintiff['] s entire medical file and discusses thoroughly the records and opinions
> of the treating physicians. Dr. Bauer, an Orthopedic surgeon, states,
>
>> [t]his claimant has significant complaints of pain that are accepted
>> on face value by her treating physicians. She is assigned a specific
>> diagnosis that increase [sic] her sense of impairment. Her surgical
>> explorations have shown minimal pathology and the objective
>> testing shows minimal pathology ... There is no evidence of ongoing
>> significant functional impairment.
>
> He also states that the abnormalities of plaintiff s laboratory results are nonspecific
> and not lasting, and the response to treatment is not consistent with these findings.
> Plaintiff has mild degenerative arthritis in her knee and back which does not
> explain her pain. Her degenerative changes in the TFCC can be found in the
> normal population and her bone scan was negative which, if plaintiff was suffering
> from arthritis, would be expected to show evidence of an arthritic process. (See,
> Exhibit B to the Plaintiff s Motion, p. 6) In addition, Dr. Karr, a rheumatologist
> also completed an in depth review and analysis of plaintiff s medical records. Dr.
> Karr concludes that plaintiff s rheumatologist, Dr.Tamesis found evidence of
> synovitis on only one occasion. Dr. Karr notes that after reviewing all of Dr.
> Tamesis' office notes, there was no further mention of synovitis or synovial
> thickening in the physical examinations.
>
>> Indeed, the overwhelming majority of exam findings throughout
>> these notes do not mention soft-tissue swelling or synovial

17

> thickening. Furthermore, testing for rheumatoid factor was
> consistently negative as was ANA .... Furthermore, the report of the
> bone scan of the upper extremities was reported as normal.
> Although this study was done in an attempt to address the
> possibility of reflex sympathetic dystrophy, the study would
> typically indicate increased uptake in small joints in rheumatoid
> arthritis *if that condition were present and active.*

[emphasis added] Dr. Karr also notes that the MRI of the left wrist dated 12/17/02
identified no evidence of synovitis or joint effusion, which weighed heavily against
the presence of an underlying inflammatory arthritis. *"The notes from Dr. Tamesis
do not provide a clinical basis for identifying a significant response to
immunosuppressive therapy."* He concludes by finding that the medical records
fail to identify a medical basis for underlying arthritis or any resulting impairment
or restrictions. (See, Exhibit "B" to Plaintiffs Motion).

(D.I. 35 at 3-4) (emphasis in original)[1]

Plaintiff faults Dr. Bauer for never mentioning Dr. Rowe by name and criticizes Dr. Karr

for only briefly mentioning Dr. Tamesis. In doing so, plaintiff appears to be relying on a

statement this Court made in *Goletz I*, 452 F. Supp. 2d at 551, noting that "defendant failed to

reference Dr. Rowe or Dr. Tamesis, or attempt to reconcile their conflicting opinions that plaintiff

could not work with diagnosed inflammatory polyarthritis." Defendant has now reconciled the

conflicting opinions by providing the explanations of Drs. Bauer and Karr, which review

plaintiff's medical records and explain how these two new specialists can, and did, reach the

conclusion that plaintiff was not disabled. The number of times the new evaluations mention the

treating physicians by name is not especially important. What matters is whether these new

evaluations adequately explain why the opinions of the treating physicians were rejected. I

believe they do. By providing a thorough and fully supported basis for concluding that plaintiff is

---

[1]Plaintiff asserts: "Under the Plan, a treating physician's opinion was to be considered in
the determination process. (A-578)" Pl.'s Reply (D.I. 40) at 4. There is no indication that
defendant failed even to consider the opinions of Drs. Rowe and Tamesis.

not disabled, the new medical evaluations at the same time explain, at least implicitly, why the contrary opinions of the treating physicians could be rejected.

## C.    Defendant Obtained A Vocational Assessment

In *Goletz I*, this Court cited defendant's failure to consult a vocational expert as evidence of defendant's self-serving approach. *See* 452 F. Supp. 2d at 551 n.9, 553. As this Court noted, defendant's non-examining physician, Dr. Foye, had "concluded that plaintiff could work in a light-duty capacity," but had also identified "a number of restrictions with which plaintiff must comply if she were to return to the work force full-time." *Id.* at 552. Moreover, Dr. Foye "recommended, in light of his conclusions, that defendant consider[ ] vocational assessment to determine if such work is actually available to her in the workplace, and whether this would represent gainful employment for her." *Id.* (internal citations omitted). Prior to the remand, defendant had been selective in its consideration of Dr. Foye's opinion, citing only his conclusion that plaintiff could engage in light-duty work but neglecting the restrictions he had identified and ignoring his recommendation of a vocational assessment.

On remand, defendant accepted Dr. Foye's recommendation and obtained a report from vocational consultant Howard. VC Howard was asked to evaluate plaintiff's occupational opportunities based on the following restrictions: "at least light-duty capacity, no restrictions to length of sitting, no restrictions to standing or walking, ability to lift 5-10 pounds frequently and no high impact activities or fine manipulation." (D.I. 35 at 8) As defendant correctly observes, "These restrictions and limitations were recommended by Dr. Bandera at his IME of the plaintiff and are far in excess of the restrictions and limitations identified by Drs. Bauer and Karr." *Id.*

Plaintiff faults defendant for relying on the restrictions recommended by Dr. Bandera, who conducted the IME prior to *Goletz I*, and for failing to rely on the "occasional" hand use restriction noted by Dr. Foye. (D.I. 40 at 6) However, the record supports defendant's crediting of Dr. Bandera's identification of plaintiff's restrictions. While it is true that Drs. Rowe and Tamesis believed plaintiff was subject to far more limiting restrictions, it is likewise true that Drs. Bauer and Karr believed she was subject to far fewer restrictions. For the reasons described in the preceding section, I conclude that defendant's rejection of Drs. Rowe and Tamesis' opinions was not arbitrary and capricious but is supported by the record. Nor, then, was it arbitrary and capricious for defendant to ask the vocational consultant to assume physical restrictions that were far less limiting than those that Drs. Rowe and Tamesis believed were present.

**D.     Defendant's Inadequate Explanation Of The Role Of SSA's**
        **Finding Of Disability Does Not Justify A Further Remand**

In the Remand Order, the Court noted that while the SSA's decision finding plaintiff disabled for purposes of receiving Social Security disability benefits is not dispositve, it may be a factor considered by the Court in reviewing the administrator's decision. *See Goletz I*, 425 F. Supp. 2d at 552. Moreover, as the Court also observed, in this case defendant has admitted in answers to interrogatories that a social security award is considered a factor in determining whether a person is disabled under the Plan. *Id.* at 549 n.8 (citing A-578). The Court faulted defendant's lack of explanation as to what, if any, weight the SSA award was given in connection with the earlier denial decision, stating: "There is, however, no evidence demonstrating that the favorable Social Security decision was a part of defendant's final analysis. . . . Again, there is no explanation by defendant as to why the decision was rejected as evidence of plaintiff's disability."

20

*Id.* at 553.

Even after the remand it remains unclear what weight, if any, the SSA award was given. Given that defendant denied plaintiff benefits and SSA granted her benefits, presumably defendant gave very little weight to the SSA decision. The reasons for rejecting SSA's opinion, however, are not evident from the record.

While it is unfortunate that defendant did not do a better job on remand explaining how it considered the SSA award, this failing is not so problematic as to require yet another remand. The Remand Order did not expressly direct defendant to explain the weight it gave the SSA award; instead, it faulted defendant for failing to provide an adequate explanation and cited this inadequacy as one of several bases for finding the denial decision to be arbitrary and capricious. On the record now before me, and particularly given the steps defendant took to address the Court's concerns regarding the weight given to the opinions of the treating physicians as well as the vocational consultant issue, I do not find defendant's decision denying benefits to be arbitrary and capricious.

It is also true, as plaintiff acknowledges, "that there is well settled law that a social security award is not binding on the administrator" of an ERISA disability plan. (D.I. 40 at 7)  As defendant notes, "A plan administrator's decision on ERISA disability that differs from that of the SSA is not arbitrary and capricious provided it is reasonable and supported by substantial evidence." (D.I. 35 at 5)  In part this is due to differing legal standards: while the Social Security Act has a "treating physician rule," requiring administrative law judges to give controlling weight to the findings and opinions of a treating physician, neither ERISA nor defendant's Plan impose the same obligation on defendant as the Plan administrator. (D.I. 36)  In the overall circumstances

21

of this case, remanding to defendant for a further explanation of its consideration of the SSA

decision would not impact the substance of that decision to deny benefits.

I am satisfied that defendant did consider the SSA award in its decision on remand.

Defendant's August 17, 2006 denial letter states that it submitted the Social Security letter for

consideration by the new reviewing physicians. (D.I. 33 Ex. E) Although neither Dr. Bauer nor

Dr. Karr mention the SSA decision, and although plaintiff "questions" whether defendant did send

the SSA documents to them (D.I. 40 at 7), I accept defendant's representation that Drs. Bauer and

Karr were notified of the SSA award. Just as it was not necessary for the new evaluating

physicians to explain point-by-point why they reached a different conclusion than the treating

physicians, so was it unnecessary for them to explain why they reached a different conclusion than

the SSA ALJ. What matters is whether the opinions arrived at by Drs. Bauer and Karr were

sufficiently thorough and well-supported to provide a non-arbitrary and capricious basis for

defendant to reject the contrary opinions of plaintiff's treating physicians. As I have explained,

they were.


## V. <u>RECOMMENDED DISPOSITION</u>

Based on the foregoing, I recommend that the Court DENY plaintiff's motion for

summary judgment and GRANT defendant's motion for summary judgment.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections

within ten (10) days after being served with a copy of this Report and Recommendation. Fed. R.

Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the

right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d

Cir.1987); *Sincavage v. Barnhart*, 171 Fed. Appx. 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order In Non-*Pro Se* Matters For

Objections Filed Under Fed. R. Civ. P. 72, dated April 7, 2008, a copy of which is available on

the Court's website, www.ded.uscourts.gov/StandingOrdersMain.htm.

Dated: September 26, 2008

Honorable Leonard P. Stark
UNITED STATES MAGISTRATE JUDGE